IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| GREAT SOUTHERN WOOD | * | |
| PRESERVING, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. 1:06-cv-00708-CSC |
| | * | |
| AMERICAN HOME ASSURANCE | * | |
| CO., AIG, AMERICAN INTERNATIONAL | * | |
| UNDERWRITERS CORP., AMERICAN | * | |
| INTERNATIONAL MARINE AGENCY, | * | |
| | * | |
| Defendants. | * | |

DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT

Defendants American Home Assurance Co., AIG, American International Underwriters

Corp. and American International Marine Agency submit this brief in reply to Plaintiff's

opposition to Defendants' motion for summary judgment.  For the reasons stated herein, and in

Defendants' initial brief, Defendants are entitled to summary judgment as to all of Plaintiff's

claims.

I.      Dismissal of AIG, American International Underwriters Corp. and American
International    Marine Agency

Plaintiff has brought this action seeking to recover benefits under a policy issued by

Defendant American Home Assurance Co.  Plaintiff has stated no claim against the other named

Defendants and these Defendants have moved for summary judgment on that ground.  Plaintiff

has not opposed their motion and Defendants AIG, American International Underwriters Corp.

1

and American International Marine Agency are entitled to summary judgment as to all of Plaintiff's claims.


II.     <u>Breach of Contract Claim</u>

Plaintiff asserts that the loss of its cargo was covered under the Warehouse-to-Warehouse clause of the American Home policy.  This clause expressly provides that the insurance attaches "for the commencement of the <u>transit</u> and continues <u>during the ordinary course of transit</u>." (Policy, § 19) (emphasis added). After discharge from the vessel, the insurance "continues whilst the goods are <u>in transit and/or awaiting transit</u> . . . ."   (Policy, § 19) (emphasis added).

The policy and the case law construing such policies are clear that the insurance continued only while the cargo was "in transit."  At the time the goods ceased to be in transit, the coverage terminated.  The Warehouse-to-Warehouse clause was intended to cover goods after discharge from the vessel while in the ordinary course of transit and to the consignee's warehouse, or some place of storage where the goods are held for the consignee.  <u>See</u> <u>Lumber & Wood Products Inc. v. New Hampshire Ins. Co.</u>, 807 F.2d 916, 919 (11th Cir. 1987).  In this case, the goods ceased to be in transit when the goods were delivered to the custody and control of Great Southern at its leased warehouse space in Gulfport, Mississippi.

The court in <u>Pacific Tall Ships Co. v. Kuehne & Nagel, Inc.</u>, 76 F. Supp.2d 886 (N.D. Ill. 1999) explained:  "Warehouse-to-warehouse clauses are standard in policies covering marine cargo. A considerable amount of case law interprets such clauses, and precisely when transit commences.  <u>See</u>, <u>e.g.</u>, <u>Kessler Export Corp. v. Reliance Ins. Co.</u>, 207 F. Supp. 355 (E.D. N.Y. 1962); <u>Brammer Corp. v. Holland-America Ins. Co.</u>, 228 N.Y.S.2d 512 (N.Y. Sup. Ct. 1962);

2

San-Nap-Pak Mfg. Co. v. Firemen's Ins. Co. of Newark, N.J., 47 N.Y.S.2d 542 (City Ct. N.Y.

1944).  In other words, the meaning of 'in transit' in the context of warehouse-to-warehouse

clauses is not ambiguous."  Id. at 893.

 "Property is considered in transit when it is moving from one location to another."

Fireman's Fund Insurance Co. v. Service Trans. Co., 466 F. Supp. 934, 935 (D.C. Md. 1979)

(quoting Boonton Handbag Co., Inc. v. Home Ins. Co., 310 A.2d 510, 511 (N.J. App. Div.

1973)).  The court in Hagger Co. v. United States Fire Ins. Co., 497 S.W. 2d 61 (Tex. Civ. App.

1973) explained:  "The term 'in transit' is constantly used in the inland marine insurance and

related fields, such as the inland floater policy in this case.  Courts frequently have occasion to

ponder the meaning of the phrase.  The dictionary meaning of the word 'transit' is 'the act of

passing."  Id. at 63 (quoting Century Dictionary and Cyclopedia).  "'In transit' means literally in

course of passing from point to point, and such is its common acceptation."  Id. (internal

quotation omitted).

 In this case, Great Southern took delivery of its lumber in Gulfport and stored it at its

leased warehouse while Great Southern determined whether it would ship the lumber directly to

customers, or take it to one of its facilities for treatment prior to sale.  (Goff Dep. at 15-16).  For

example, Great Southern's documents show a number of direct sales Great Southern made to

customers from its Gulfport warehouse.  (Delivery Breakdown, attached hereto as Exhibit A).

These sales included lumber shipped on the vessel Kestrel Arrow v. 45, one of the shipments at

issue in this case.  Great Southern's "Delivery Breakdown" shows that it sold lumber from its

Gulfport warehouse to Georgia Pacific on August 24, 25 at 26, 2005.  (Delivery Breakdown).

Plaintiff also sold lumber (initially shipped on the Kestrel Arrow) to Nuss Lumber on August 25,

2005.  (Delivery Breakdown).   The records further indicate that in August 2005, Plaintiff also sold lumber from its Gulfport warehouse -- shipped on other vessels -- to Georgia Pacific on August 2, 3, 8 and 11, 2005.

Great Southern's "Delivery Breakdown" shows that the purchasers, e.g., Georgia Pacific, picked up the sold lumber at Great Southern's Gulfport warehouse.  See also, Great Southern Invoices, attached hereto as Exhibit B.  Therefore, Great Southern relinquished both custody and ownership of these goods upon sale and delivery to a customer.  Upon a sale, at that point Great Southern had no insurable interest in continued transit and Gulfport was the last and "final destination" at which Great Southern had any interest in the goods.

Additionally, Great Southern had processing facilities in Mobile, Alabama, Abbeville, Alabama, Muscle Shoals, Alabama, Conyers, Georgia, Jessup, Georgia and Lake Panasofkee, Florida as well as satellite production centers at other locations.  (Goff Dep. at 12).  Although Great Southern attempted to forecast its inventory needs at certain plants, Great Southern did not decide where to specifically send any particular lumber until the lumber was in storage in its Gulfport warehouse.  (Goff Dep. at 98-99).  Great Southern's corporate representative testified as follows: "Q:  . . . .  [Y]ou could have one consignment of ocean cargo planned to go all in one treatment facility and then when its gets there [to Gulfport], or at some point in time after that, say, well, we're going to send half of it to one and half of it to the other?  A:  Yes.  It could." (Goff Dep. at. 98-99).

Plaintiff asks the Court to find that coverage continued after Great Southern received the goods and thereafter while it indefinitely stored the lumber in its own leased warehouse until, in its sole discretion and for its own convenience, it dispatched the goods to later-determined

4

locations.  The law, however, is clear that coverage under an "in transit" policy terminates when the insured accepts delivery of the goods and stores the goods for its own convenience.  <u>See</u>, <u>e.g.</u>, <u>Exchange Lemon Products Co. v. Home Ins. Co.</u>, 235 F.2d 558 (9th Cir. 1956); <u>Dealers Dairy Products Co. v. Royal Ins. Co.</u>, 164 N.E.2d 745 (Ohio 1960); <u>see also</u> <u>Lumber & Wood Products Inc. v. New Hampshire Ins. Co.</u>, 807 F.2d 916, 920 (11th Cir. 1987) ("In those instances where it is simply more convenient for the consignee to allow the cargo to be stored outside its warehouse, the shipper cannot indefinitely of avail itself of coverage because the cargo is allegedly 'in transit.'"); <u>St. Maurine Valley Paper Co. v. Continental Ins. Co.</u>, 1936 AMC 152, 153 (E.D. N.Y. 1936) (ruling "[Goods were] in the possession not of the ship but of . . . the consignee.  The liability of the insurer went no further."); <u>M.J. Federman Co. v. American Ins. Co.</u>, 196 N.E. 297, 1935 AMC 1224, 1226 (E.D. N.Y. 1935) ("Whatever would be the duration of a risk under such a stipulation, it is clear, we think, that an insured may put an end to it by taking delivery outside his own premises.").

In their initial brief, Defendants cited certain authorities holding that transit ends when the insured takes custody and control of goods, and coverage under a Warehouse-to-Warehouse clause terminates when the goods are no longer in transit.  In its response, Great Southern tries to avoid the result dictated by these cases.  In <u>Lumber & Wood Products Inc. v. New Hampshire Ins. Co.</u>, 807 F.2d 916, 920 (11th Cir. 1987), the Eleventh Circuit expressly held that coverage under a Warehouse-to-Warehouse clause ended when an insured took custody and control of cargo, even though the insured took delivery at a location other a designated final destination.  Great Southern tries to escape the holding of <u>Lumber & Wood Products</u> by arguing that the case turned on time limitations.  However, the Eleventh Circuit clearly stated: "The <u>fundamental</u>

5

<u>issue in this case</u> focuses on the construction of the Warehouse-to-Warehouse and Marine

Extension Clauses of the Marine Open Cargo Policy as to <u>whether the lumber was 'in transit'</u>

within the meaning of those clauses." <u>Id.</u> at 918-19 (footnote omitted, emphasis added). The

court further explained:

> The lumber in this case was "in transit" as it was shipped from South America to
> Chickasaw. The lumber was covered throughout that travel period, including
> temporary stops, incidental delays and deviations from the planned route of
> travel. When the lumber reached its destination at Delta Hardwood's dock, the
> lumber could no longer be considered "in transit." The lumber had arrived at its
> "final warehouse" and was merely been stored prior to being sold. Transit had
> ceased.

<u>Id.</u> at 921. As transit had ceased, coverage terminated. <u>Id.</u> As transit had likewise terminated in

this case, there was no coverage for the lumber at the time of loss.

Great Southern also attempts to avoid the holdings of two other cases cited by

Defendants, <u>Jomark Textiles, Inc. v. Int'l Fire and Marine Ins. Co., Ltd.</u>, 1991 A.M.C. 1393 (S.D.

N.Y. 1989) and <u>New York Marine & General Ins. Co. v. Tradeline LLC</u>, 2003 A.M.C. 414 (S.D.

N.Y. 2003).

In <u>Tradeline</u>, the court held that because the insured exercised custody and control over

the cargo, the cargo was no longer in transit. The court explained:  "To test whether goods have

reached their 'final' destination, courts have often been focused on whether the consignee

exercised dominion and control over the shipment."  The court found as follows:  "[T]hus [the

insured] exercised dominion and control over the goods in the silo.  Accordingly, the [goods]

w[ere] no longer in transit and no longer covered by the disputed marine cargo insurance

policy." <u>Id.</u>  Plaintiff attempts to distinguish the <u>Tradeline</u> case by arguing that the policy at

issue provided that "transit" terminated when the insured placed the goods into "storage at the

destination" or "storage other than in the ordinary course of transit."  However, these provisions merely express the well-established law that once goods are placed in the custody and control of the insured, the goods are no longer in transit and no longer covered under the policy.

Likewise, in Jomark Textiles, Inc. v. Int'l Fire and Marine Ins. Co., Ltd., 1991 A.M.C. 1393 (S.D. N.Y. 1989), the court found that the insured used a warehouse "as a 'staging place' from which [the insured] would distribute the goods once it determined their final destination." Id. at 579-80.  The court explained:  "Since [the insured] exercised dominion and control over the goods, they were no longer in transit as a matter of law, and therefore, were no longer covered by the Marine Cargo policy."  Id. at 580.  The Jomark policy provided that transit terminated upon "storage other than in the ordinary course of transit" or upon "allocation or distribution" of the goods by the insured.  Great Southern argues that these provisions distinguish the case.  However, as with Tradeline, the essence of the court's ruling was that once the insured took custody and control of the goods, and the goods were not traveling to any designated destination, coverage terminated under the policy.

Courts have consistently held that once an insured takes custody and control of cargo, and the goods are not en route to a specific destination, coverage terminates under an "in transit" clause of a policy.  For example, in Exchange Lemon Products Co. v. Home Ins. Co., 235 F.2d 558 (9th Cir. 1956), an insured shipped goods under a policy which provided coverage while goods were "in the due course of transit."  Id. at 560.  The insured shipped the goods to a terminal warehouse in Kansas City which it used as an intermediate staging area for goods which would subsequently be transported to other and final destinations.  While in storage at the warehouse, the goods were destroyed by flood.  The insured claimed that the goods were

7

earmarked for shipment to Chicago, although it was revealed that the goods had been in storage for months at the time of loss.  The court noted that when the goods were unloaded at the Kansas city warehouse, the ultimate destination had not been designated (and may not have been known).  Id. at. 559.  The court found that because the goods were not en route to a designated final destination, and were merely in intermediate storage in the warehouse, the goods were not in transit and therefore there was no coverage for the loss.  Id. at 561-62.

In Dealers Dairy Products Co. v. Royal Ins. Co., 164 N.E.2d 745 (Ohio 1960), the policy at issue provided coverage while goods were "in transit."  Although the insured began transporting the goods, the insured offloaded the goods and placed them in storage while it made other deliveries to customers.  The goods were then lost and the insured claimed coverage under the policy.  The court found that coverage terminated when the goods were indefinitely taken out of transit.  The court explained:  "The words 'in transit' and 'transportation' contained in an insurance policy, such as the ones involved herein, comprehend the carriage of goods from one point to another and ordinarily mean the movement of goods on a transporting conveyance from the starting point to a point of delivery, including stops along the way incidental to the carriage."  Id. at 747.  The court continued:

> But the words "in transit" and "transportation" as they appear in the policies before us and as construed under the circumstances here involved, did not embrace a period of days during which for the convenience of the insured and to divert the transporting conveyance to other businesses of the insured, the goods or unloaded and deposited on designated premises and left their rest while the transporting conveyance to parts and is used on another transportation project foreign to the original shipment.  An abandonment of the original transporting process thereby occurs, even though such an interruption is temporary.
>
> In circumstances related, a storage of goods occurs and while and storage they are removed from the protection of a policy which insures against loss only when the

goods are in transit or were being transported.

Id. at 747.

In Ins. Co. of N. Am. v. United States Fire Ins. Co., 322 N.Y.S. 2d 520 (N.Y. Sup. Ct. 1971), the court addressed a hurricane loss at a Gulfport warehouse. The goods were insured under an underlying open marine cargo policy[1] which provided coverage while the goods were in transit. Id. at 523-24. The goods at issue had been shipped from interior ports and were intended for overseas transport. However, at the time of loss the goods were undergoing processing whereby the goods were placed in the individual bags. The bagging process was not necessary to shipment and was merely provided as a service to the customer. Id. at 522. The court found: "The stoppage and bagging of the cargo at Gulfport was an interruption in the transit of the goods and created a shore risk not insured under plaintiff's original insurance contract." Id. at 524. The court ruled on summary judgment that because the goods were not in transit, there was no coverage under the policy. Id.; see also Koshland v. Columbia Ins. Co., 130 N.E. 41 (Mass. 1921) (goods lost at processing facility to which they were sent for convenience of insured were not "in transit" for coverage under policy); Allied Leisure Indus., Inc. v. American Mut. Liability Ins. Co., 342 So. 2d 540 (Fla. App. 1977) (goods lost while temporarily stored at dock after shipment cancelled were not in transit for coverage under policy); Glendinning Co., Inc. v. Aetna Ins. Co., 395 A. 2d 354 (Conn. Super. Ct. 1978) (goods awaiting re-shipment were not in transit for coverage under policy).

---

[1]  A policy of reinsurance was issued and the suit involved a dispute between two insurers.

In <u>Sovereign Recycling Int'l, Inc. v. New York Marine & Gen. Ins. Co.</u>, 2001 WL 225243 (S.D. N.Y. 2001), the court addressed a claim that goods were in transport despite being held in indefinite storage with no designated final destination.  The insured claimed that the goods were insured under a Warehouse-to-Warehouse clause identical to that in this case.  The insured held the goods in a warehouse while determining which of its customers needed the goods and in what quantities.  <u>Id.</u> at. *3.  The court explained:  "When the 13 boxes arrived in Rotterdam, plaintiffs exercised dominion and control over them and put them into a warehouse for almost two months, while plaintiffs determined which customers needed cobalt, and in what quantities.  While the boxes of ingots were in the warehouse, they were not 'in transit' and thus were not covered by clause 7 of the policy." <u>Id.</u> at *8.

In this case, Plaintiff received goods at its Gulfport warehouse which were shipped to the warehouse on bills of lading identifying Gulfport as the destination.  Plaintiff held the goods there indefinitely while, at its convenience and in its discretion, it later designated locations to which the goods would be transported, or, until it sold the goods to a customer.  The policy in this case expressly required that the goods be "in transit" for coverage to continue under the policy.  The law is clear that when an insured receives goods and stores them in its own warehouse space for further (yet initially undesignated) dispatch, at its convenience and in its discretion, the goods are no longer in transit for purposes of coverage under the policy.

Finally, without any legal authority, Plaintiff argues that despite admittedly having the goods in its custody and control, and in its own leased warehouse space,[2] Plaintiff claims that

---

[2]  Plaintiff's warehouse lease expressly provided Plaintiff would have care, custody, control and protection of the lumber.  (Lease Agreement, ¶ F, Ex. 11 to Goff Dep.).

lumber shipped on the Sanko Stream v. 19[3] remained "in transit" due to a purported USDA hold on the lumber at the time of the loss.  However, a government hold on goods in the possession, custody and control of the insured does not render the goods "in transit" for insurance coverage. See Fireman's Fund Ins. Co. v. Service Trans. Co., 466 F. Supp. 934 (D.C. Md. 1979).  Great Southern's corporate representative testified that although the USDA placed certain restrictions on lumber shipped on the Sanko Stream, the goods had been received by Great Southern in its warehouse and were in Great Southern's possession.  (Goff Dep. at 95, 121).

In Fireman's Fund Ins. Co. v. Service Trans. Co., 466 F. Supp. 934 (D.C. Md. 1979), the insured sought benefits under a policy which provided coverage for goods in "the ordinary course of transit."  Id. at 935.  The goods at issue were bags of Nicaraguan coffee which were initially received in New York.  Upon arrival in New York, the Food and Drug Administration placed a hold on the goods.  While the FDA hold remained in effect, the goods were transported in bond to the insured's Baltimore, Maryland terminal.  The goods remained in the insured's custody.  Id. at 936.  The goods were subsequently destroyed by a fire at the Baltimore terminal.  The insured argued that, despite having custody and possession of the goods, the FDA hold meant the goods remained suspended in transit.  The court rejected this argument and explained:  "While it may be true that the coffee's ultimate distribution was delayed owing to the action of the FDA, that does not alter the fact that as between these parties, [plaintiff's] South Kresson

---

[3]   Ever were the argument meritorious, Plaintiff's USDA hold argument only applies to the cargo shipped on the Sanko Stream v. 19.  The cargo shipped on the Kestrel Arrow v. 45, which arrived August 5, 2005, was not under any hold at the time of the loss.  As noted above, Plaintiff had been disbursing the lumber shipped on the Kestrel Arrow prior to the loss including numerous sales to customers.  Consequently, even were Plaintiff's USDA hold argument with merit, it would not entitle Plaintiff to avoid summary judgment as to the shipments on the Kestrel Arrow v. 45.

Street terminal was the destination of the coffee. Once the coffee reached the terminal, it was no longer 'in the ordinary course of transit.'" Id. at 937.[4]

As Defendants have shown, the coverage at issue in this case ended when the goods were no longer in transit and, in Plaintiff's custody and control, and in indefinite storage at Plaintiff's Gulfport warehouse. Consequently, Defendants are entitled to summary judgment on Plaintiff's breach of contract claim.


III.    Bad Faith Claim

Plaintiff has opposed summary judgment on the bad faith claim arguing that American Home did not have a debatable reason to deny coverage. As shown above, both the facts and the law clearly provided American Home reason to deny coverage.

Plaintiff also argues that the "in transit" provision is ambiguous and that American Home was in bad faith by relying on the provision to deny coverage. As noted above, the court in Pacific Tall Ships Co. v. Kuehne & Nagel, Inc., 76 F. Supp.2d 886 (N.D. Ill. 1999) explained: "Warehouse-to-warehouse clauses are standard in policies covering marine cargo. A considerable amount of case law interprets such clauses, and precisely when transit commences. See, e.g., Kessler Export Corp. v. Reliance Ins. Co., 207 F. Supp. 355 (E.D. N.Y. 1962); Brammer Corp. v. Holland-America Ins. Co., 228 N.Y.S.2d 512 (N.Y. Sup. Ct. 1962); San-Nap-Pak Mfg. Co. v. Firemen's Ins. Co. of Newark, N.J., 47 N.Y.S.2d 542 (City Ct. N.Y. 1944). In

---

[4]   The facts in this case where Great Southern held the cargo in its own warehouse must be distinguished from certain older reported cases where goods were held in a separate customs warehouse under a customs hold prior to delivery to the insured. See, e.g., Ocean Marine Ins. Co. v. Lindo, 30 F.2d 782 (9th Cir. 1929) ("it cannot be said, we think, that the goods were safely deposited in the consignee's or other warehouse within the meaning of the policy, while in the custom house") (emphasis added).

other words, **the meaning of 'in transit' in the context of warehouse-to-warehouse clauses is not ambiguous**." Id. at 893 (emphasis added).

As shown, the "in transit" term has been construed by numerous courts and the provision is not ambiguous.  As illustrated above, the denial of coverage was founded on the long line of case law holding that coverage terminates when transit ends upon delivery to the insured. Therefore, American Home did not rely on an ambiguous provision in denying coverage and the bad faith claim fails.

Although the argument has no merit, Plaintiff finally argues that American Home was in bad faith because it failed to investigate the claim and note the purported USDA hold on the Sanko Stream v. 19 shipments.  Great Southern has raised this purported USDA hold issue for the first time during the summary judgment stage of this case.  At no time during the claim investigation did Great Southern assert that the Sanko Stream shipments were under any USDA hold.  Rather, as shown below, during the claim investigation Great Southern represented that the shipments had cleared customs.  The documents Great Southern produced during the claim investigation expressly stated as to the shipments from both vessels at issue:  "Customs Cleared in Gulfport."  (Richard Murray & Co. Docs., attached hereto as Exhibit C).  Even after the claim was denied, when stating his objections to the denial Great Southern's own lawyer failed to mention of any USDA hold.  (Dowdy July 21, 2006 Let., attached hereto as Exhibit D).

Now, long after the claim investigation has concluded, Great Southern argues American Home was in bad faith based on an issue Great Southern had not heretofore raised, based on a document Great Southern failed to produce, and based on facts not known to American Home. Clearly, even were the USDA hold issue relevant, American Home cannot have been in bad faith

13

based on an issue either unknown, or at the least undisclosed, by Great Southern during the claim investigation.

In support of its USDA hold argument, Great Southern relies on a report from its own customs agent which is dated October 6, 2006, two months after Great Southern filed its complaint.  (ABI Processing Rep., attached hereto as Exhibit E).  As noted, Great Southern failed to produce (and based on the document date, likely did not possess) the cryptic ABI Processing Status Report which Plaintiff contends shows a USDA hold on the Sanko Stream shipments.

During American Home's investigation of the claim, it repeatedly requested documents from Great Southern concerning the discharge and delivery of the cargo.  American Home's requests clearly encompassed documents concerning any hold or detention of the cargo.  Despite the requests, Great Southern, which was assisted by both in-house and outside council during the investigation, did not raise the USDA hold issue and did not produce its ABI Processing Status Report.

Great Southern's corporate representative admitted in deposition that documentation concerning USDA inspections is maintained on an online system and that the information is maintained by Great Southern's customs agent, Richard Murray & Co.  (Goff Dep. at 56-57).  During American Home's investigation, Great Southern's insurance broker, Dan Morton, who was handling the claim for Great Southern, stated that the customs documents they produced "**are date stamped with arrivals and customs clearances**."  (Morton May 1, 2006 Email, attached as Exhibit 13 to Selena Ho Decl.; <u>see also</u> Richard Murray & Co. Docs.).  As noted, Great Southern produced no documents showing any USDA hold and the documents they

14

produced, and their characterization of the documents indicated the lumber had cleared customs.

After American Home received the claim, it retained SGS North American - Marine Services to investigate the claim. (Ho Decl., attached hereto as Exhibit F). SGS contacted Plaintiff and requested documentation concerning the claim including dock receipts of discharge, warehouse receipts and other documents indicating when Great Southern received the goods into its warehouse. (M. Iversen Email Sept. 9, 2005, attached as Exhibit 1 to Ho Decl.). By email dated September 29, 2005, SGS reported that it had attempted to contact Great Southern concerning the claim but that Great Southern was not returning their phone calls. (M. Iversen Sept. 29, 2005 Email, attached as Exhibit 2 to Ho Decl.).

By letter dated October 7, 2005, Plaintiff's counsel, Donald Lusk, wrote to SGS surveyor Fred Clausen concerning the requests and a conference call between the Great Southern lawyers and the surveyor. (Lusk Oct. 7, 2005 Let. attached as Exhibit 3 to Ho Decl.). Of note, Mr. Lusk directed that all communication concerning the claim must be channeled through the lawyers. Lusk noted the request for documents concerning discharge of the cargo. He stated: "I inquired of you about what information would be contained in the 'dock receipts of discharge,' which would relate to your activities. You told me that such 'dock receipts of discharge' documents would provide you with 'notice of arrival, date of arrival, date and time of discharge and to whom the goods were discharged.'" He continued: "Mr. Belcher [Great Southern's in-house counsel] and I inform you that to the best of our present knowledge, no 'warehouse receipts' as requested by Ms. Ho, exist and that to the best of our knowledge, the information you are trying to obtain is contained within the customs documents, pertaining to the shipments and the property, already within the materials you have obtained from Ms. Ho."

The customs documents Plaintiff provided to American Home indicated that the Sanko Stream v. 19 and Kestrel Arrow v. 45 cleared customs prior to the storm.  As noted, it was only after Plaintiff filed its lawsuit did it raise the USDA hold issue.

Surveyor Roger Iversen reported to claims adjuster Selena Ho concerning the October 7, 2005 conference with Great Southern's lawyers.  Mr. Iversen stated:

> We, acting as surveyors, advised Mr. Lusk that documentation pertaining to the voyage history, as well as discharge information on dock receipts and arrival notices and any other documentation pertaining to the location of the shipments at the time of the hurricane impact would be required.
>
> Mr. Lusk was very conservative about submitting information pertaining to the actual discharge date.  We informed Mr. Lusk that this information is important in order to establish the location of the goods as much as all of the goods were left on the dock when Hurricane Katrina hit the area.  . . . .  At this point we advised Mr. Lusk that we would await his advises and at that time Mr. Lusk informed us that due to his busy schedule that his correspondence may be delayed.  I reiterated to Mr. Lusk and Mr. Belcher that before any investigation and inspection can be made we will need documentation indicating the discharge of the vessels at Gulfport, Mississippi.

(R. Iversen Oct. 7, 2005 Let., attached as Exhibit 4 to Ho Decl.).

Selena Ho forwarded Mr. Iversen's October 7, 2005 letter to Great Southern's insurance broker who was handling the claim.  Ms. Ho wrote:

> Please help convince the insured and their attorney that we need to have records of when the various lumber shipments arrived at the warehouse.
>
> We can only inspect verified shipments.  Thank you!

(Ho Handwritten Memo, attached as Exhibit 5 to Ho Decl.).

By letter dated November 2, 2005, the SGS surveyor reported to Selena Ho on the status of the investigation.  He stated:

> According to the letter sent to us by Great Southern Wood Preserving's attorney

Lusk, Lusk, Dowdy & Caldwell, PC, they were supposed to obtain the
information we requested and send it to our office in New Orleans.

As of this date we have not received the information requested.

As per the letter sent October 7, 2005 by the attorney, they have asked that we do
not communicate with the insured as all communication should be through the
their office.

This is highly unusual on a marine claim and unfortunately our file has been
inactive since his letter of October 7, 2005.

(R. Iversen Nov. 2, 2005 Let., attached as Exhibit 6 to Ho Decl.).

Selena Ho subsequently wrote to Great Southern's insurance broker and stated as follows:

Dear Susan, please note our surveyor's update that he has not heard from the
insured nor their attorney on requested documents.  It's been two months since we
received the notices of loss.

As we discussed numerous times, we need the insured's warehouse
records/receipts to show when the shipment went into the warehouse and the
quantity of lumber that was stored.  These documents are important of verify
whether what they claimed was actually under the policy period as well as under
the coverage period.

Susan, please help us by contacting the insured to advise them that if we do not
receive the requested documents within the next 60 days, we will consider closing
our files due to non-activity.  We also do not want to correspond for the insured's
attorney for we are not comfortable with this style and behavior.  These are not
litigated matters.  Therefore, our surveyor will go through your office from now
on for any request an additional information, with copies to our office for our
files.

(Ho Nov. 2, 2005 Email, attached as Exhibit 7 to Ho Decl.).

By letter dated December 22, 2005, Great Southern's lawyer wrote to SGS surveyor Fred

Clausen stating that no warehouse receipts existed and asserting that documents previously

produced showed the amount and location of the lumber at the time of loss.  (Lusk Dec. 22, 2005

Let., attached as Exhibit 8 to Ho Decl.).

By letter dated February 7, 2006 and sent to Great Southern's lawyer, the surveyor again requested documents concerning the claim.  Surveyor Roger Iversen wrote:

As of this date we still have not received all the requested information in order for us to resolve this matter and submit our report to the underwriters for further consideration.

As previously requested, would you kindly obtain the vessels' arrival date at the port of discharge together with the ocean bills of lading covering these movements into the United States.  As soon as we obtain this information we will then be in a position to finalize this matter and submit our report to the underwriters for their further consideration.

(R. Iversen Feb. 7, 2006, attached as Exhibit 10 to Ho Decl.).

On February 15, 2006 Selena Ho wrote Great Southern's insurance broker and again requested documentation.  Ms. Ho wrote:

To date, we and the surveyor have yet to receive the warehouse receipts/records on their lumber shipments that went into the affected warehouse before the hurricane hit.  Roger Iversen at SGS Marine wrote to Mr. Lusk again on 2/7/06 again asking for the requested documentation.  Susan, in order for us to adjust these 2 losses we have to have proof that the shipments that they claimed did enter the warehouse within the coverage period, the lumber counts that went into the warehouse before the hurricane hit, etc.

 (Ho Feb. 15, 2006 Email, attached as Exhibit 11 to Ho Decl.).

On May 1, 2006, Plaintiff's insurance broker wrote to Ms. Ho and stated that the documents from Great Southern's customs broker Richard Murray & Co. "**are date stamped with arrivals and customs clearances**."  (Morton May 1, 2006 Email) (emphasis added).  As noted, these documents state:  "Customs Cleared in Gulfport."  (Richard Murray & Co. Docs., attached hereto as Exhibit C).

On June 26, 2006, Selena Ho wrote to Great Southern's insurance broker concerning the claim and noted:  "Seems like we are missing some information."  (Ho June 26, 2006 Email,

18

attached as Exhibit 14 to Ho Decl.).  The email was forwarded to Great Southern's in-house

counsel, Sid Belcher.  He responded:  "They have all of the information we have; we have sent it

to them twice now.  Any further delays will result in a lawsuit."  (Belcher June 26, 2006 Email,

attached as Exhibit 14 to Ho Decl.).   American Home subsequently denied the claim by letter

dated July 6, 2006.

        Finally, on July 21, 2006, after issuance of the denial letter, Great Southern's lawyer,

Kenneth Dowdy, wrote to Selena Ho objecting to the denial of the claim.  (Dowdy July 21, 2006

Let., Exhibit D).  In his list of objections, Mr. Dowdy made no reference to any USDA hold (as

neither he nor any of the other Great Southern lawyers had made any reference to any USDA

hold during the claim investigation).  Rather, Mr. Dowdy stated:  "The Sanko Stream v. 19

delivered 100 tractor-trailer loads of lumber four days before the storm and of those 100 loads,

none were able to be transported out of the port."  He further stated:  "The lumber shipments

noted in this letter were actively being transported from the port . . . ."

        Mr. Dowdy's letter, and Great Southern's conduct during the investigation, indicate that

this USDA hold argument is merely an after-the-fact contrivance which has been solely raised

for the purposes of this litigation.  Clearly, American Home cannot have been in bad faith for an

issue not discovered during the claim investigation by Great Southern itself, its lawyers or its

insurance broker handling the claim, and particularly because any information concerning the

purported hold was within the possession of Great Southern's own customs agent.

        Based on the foregoing, Defendants are entitled to summary judgment on Plaintiff's bad

faith claim.

IV.    Conclusion

For the reasons stated herein and in Defendants' initial brief, Defendants are entitled to

summary judgment on Plaintiff's claims.


                                    s/Blane H. Crutchfield_____
                                   BLANE H. CRUTCHFIELD (CRUTB4243)
                                   LOUIS C. NORVELL (NORVL4585)
                                   Attorneys for Defendants
                                   American Home Assurance Company, AIG,
                                   American International Underwriters Corporation,
                                   and American International Marine Agency

OF COUNSEL:

HAND ARENDALL, L.L.C.
P. O. Box 123
Mobile, AL 36601-0123
Tel:  (251) 432-5511
Fax:  (251) 694-6375

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this 17th day of July, 2007 served the foregoing pleading on counsel of record via electronic notice or by United States mail first class, postage prepaid.

Kenneth A. Dowdy, Esq.
Lusk, Lusk, Dowdy & Caldwell, P.C.
2101 Highland Ave.
Suite 410
Birmingham, AL 35205

Leslie Ann Caldwell, Esq.
Lusk, Lusk, Dowdy & Caldwell, P.C.
2101 Highland Ave.
Suite 410
Birmingham, AL 35205

s/Blane H. Crutchfield_____

# Exhibit A

Delivery Breakdown for Great Southern Wood (in Metric Tons)

**Delivery Breakdown for Great Southern Wood**
**(in Metric Tons)**
SSA Gulfport
SSA - Port of Gulfport - West Pier Gulfport, MS 39501
From: 8/1/2005    To: 10/31/2005

| Date | Vehicle ID | Carrier | Consignee | Delivery Order | Probill/Truck Bill | Control ID | Cust Ref | Vessel/Voyage | Commodity | Packaging | Marks |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/1/2005 9:42:13 AM | C3493 05-537 | GSWP | Great Southern Wood | C3493 | | 26250 | P3493 | PENGUIN053 | B58 | Bundles | B58 |
| 8/1/2005 10:35:21 AM | C3844 5-240 | GSWP | Great Southern Wood | C3844 | | 26239 | P3844 | PENGUIN053 | 3686 | Bundles | 2 X 4 X 12 |
| 8/1/2005 10:35.21 AM | C3844 5-240 | GSWP | Great Southern Wood | C3844 | | 26239 | P3844 | PENGUIN053 | 3687 | Bundles | 2 X 4 X 14 |
| 8/1/2005 11:49:42 AM | C3843 05-230 | GSWP | Great Southern Wood | C3843 | | 26238 | p3643 | PENGUIN053 | 3696 | Bundles | 2 X 4 X 12 |
| 8/1/2005 11:49:42 AM | C3843 05-230 | GSWP | Great Southern Wood | C3843 | | 26238 | P3643 | PENGUIN053 | 3685 | Bundles | 2 X 4 X 10 |
| 8/1/2005 11:49:42 AM | C3843 05-230 | GSWP | Great Southern Wood | C3843 | | 26238 | P3643 | PENGUIN053 | 3684 | Bundles | 2 X 4 X 8 3 |
| 8/1/2005 11:49:42 AM | C3843 05-230 | GSWP | Great Southern Wood | C3843 | | 26238 | P3643 | PENGUIN053 | 3684 | Bundles | 2 X 6 X 14 |
| 8/1/2005 1:18:47 PM | C3846 5-245 | GSWP | Great Southern Wood | C3846 | | 26241 | P3646 | PENGUIN053 | 7034 | Bundles | 2 X 6 X 12 |
| 8/1/2005 1:18:47 PM | C3846 5-245 | GSWP | Great Southern Wood | C3846 | | 26241 | P3646 | PENGUIN053 | 7033 | Bundles | R9D |
| 8/1/2005 1:38:35 PM | C2751 629 | unknown | Great Southern Wood | C2751 | | 26235 | 366494 | SPRING014 | R9D | Bundles | B58 |
| 8/1/2005 1:59:44 PM | C3494 527 | GSWP | Great Southern Wood | C3494 | | 26251 | P3494 | PENGUIN053 | B58 | B58 | 2 X 6 X 14 |
| 8/1/2005 2:23:25 PM | C3845 05-222 | GSWP | Great Southern Wood | C3845 | | 26240 | P3645 | PENGUIN053 | 7033 | Bundles | 2 X 4 X 14 |
| 8/1/2005 2:23:25 PM | C3845 05-222 | GSWP | Great Southern Wood | C3845 | | 26240 | P3645 | PENGUIN053 | 3888 | Bundles | 2 X 6 X 12 |
| 8/1/2005 2:23:25 PM | C3845 05-222 | GSWP | Great Southern Wood | C3845 | | 26240 | P3645 | PENGUIN053 | 3686 | Bundles | 2 X 8 X 14 |
| 8/1/2005 2:58:15 PM | C3647 5-242 | GSWP | Great Southern Wood | C3647 | | 26242 | P3647 | PENGUIN053 | 4815 | Bundles | 2 X 8 X 12 |
| 8/1/2005 2:58:15 PM | C3647 5-242 | GSWP | Great Southern Wood | C3647 | | 26242 | P3647 | PENGUIN053 | 3687 | Bundles | 2 X 4 X 14 |
| 8/1/2005 2:58:15 PM | C3647 5-242 | GSWP | Great Southern Wood | C3647 | | 26242 | P3647 | PENGUIN053 | 4295 | Bundles | 2 X 6 X 16 |
| 8/1/2005 2:58:15 PM | C3647 5-242 | GSWP | Great Southern | C3647 | | 26242 | P3647 | PENGUIN053 | 7035 | Bundles | 2 X 6 X 14 |
| 8/1/2005 2:58:15 PM | C3647 5-242 | GSWP | Great Southern | C3647 | | 26242 | P3647 | PENGUIN053 | 7034 | Bundles | |

AIG00488

m=8/1/200

## Delivery Breakdown for Great Southern Wood (in Metric Tons)

| Date/Time | | | Wood | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 8/1/2005 3:26:33 PM | C3497 622 | GSWP | Great Southern Wood | C3497 | 26252 | P3497 | R9D | Bundles | R9D |
| 8/1/2005 4:38:03 PM | C3648 5207 | GSWP | Great Southern Wood | C3648 | 26243 | P3648 | PENGUIN053 4287 | Bundles | 2 X 8 X 16 |
| 8/1/2005 4:38:03 PM | C3648 5207 | GSWP | Great Southern Wood | C3648R | 26243 | P3648 | PENGUIN053 4815 | Bundles | 2 X 8 X 14 |
| 8/2/2005 10:47:00 AM | C3837 05-207 | GSWP | Great Southern Wood | C3837 | 26266 | P3837 | PENGUIN053 AF-408 | Bundles | AF-408 |
| 8/2/2005 11:11:59 AM | C3513 98539 | GSWP | Great Southern Wood | C3513 | 26272 | P3513 | PENGUIN053 3441 | Bundles | 1 X 4 X 8 ·· |
| 8/2/2005 11:11:59 AM | C3513 98539 | GSWP | Great Southern Wood | C3513 | 26272 | P3513 | PENGUIN053 3443 | Bundles | 1 X 4 X 12 |
| 8/2/2005 11:11:59 AM | C3513 98539 | GSWP | Great Southern Wood | C3513 | 26272 | p3513 | WEAVER048 3444 | Bundles | 3444 - 19 x 2440 |
| 8/2/2005 11:11:59 AM | C3513 98539 | GSWP | Great Southern Wood | C3513 | 26272 | p3513 | WEAVER048 HD6008 | Bundles | HD6008 |
| 8/2/2005 11:34:51 AM | C3498 98-515 | GSWP | Great Southern Wood | C3498 | 26273 | P3498 | R9D | Bundles | R9D |
| 8/2/2005 1:18:54 PM | C3839 217 | GSWP | Great Southern Wood | C3839 | 26268 | P3839 | PENGUIN053 3446 | Bundles | 1 X 6 X 12 |
| 8/2/2005 1:18:54 PM | C3839 217 | GSWP | Great Southern Wood | C3839 | 26268 | P3839 | SWAN013 3446 | Bundles | 3446 1 X 6 |
| 8/2/2005 1:19:03 PM | C3841 510 | GSWP | Great Southern Wood | C3841 | 26271 | P3841 | SWAN013 3442 | Bundles | 3442 1 X 4 |
| 8/2/2005 1:19:03 PM | C3841 510 | GSWP | Great Southern Wood | C3841 | 26271 | P3841 | PENGUIN053 3443 | Bundles | 1 X 4 X 12 |
| 8/2/2005 1:19:03 PM | C3841 510 | GSWP | Great Southern Wood | C3841 | 26271 | P3841 | PENGUIN053 3443 | Bundles | 1 X 4 X 12 |
| 8/2/2005 1:19:03 PM | C3841 510 | GSWP | Great Southern Wood | C3841 | 26271 | P3841 | WEAVER048 HD6008 | Bundles | HD6008 |
| 8/2/2005 1:19:03 PM | C3841 510 | GSWP | Great Southern Wood | C3841 | 26271 | P3841 | AVOCET047 3445 | Bundles | 3445 - 19 ? 3050 |
| 8/2/2005 1:19:03 PM | C3841 510 | GSWP | Great Southern Wood | C3841 | 26271 | P3841 | KESTREL041 HD6/10 | Bundles | HD6/10 |
| 8/2/2005 1:19:00 PM | C3841 510 | GSWP | Great Southern Wood | C3841 | 26271 | P3841 | PENGUIN053 3446 | Bundles | 1 X 6 X 12 |
| 8/2/2005 2:58:59 PM | C3465 7386 | Georgia Pacific | Great Southern Wood | C3465 | 26289 | 250869 | PENGUIN053 CMB1D | Bundles | CMB1D |
| 8/2/2005 3:57:38 PM | C3495 518 | GSWP | Great Southern Wood | C3495 | 26270 | P3495 | BAL10A | Bundles | BAL10A |
| 8/2/2005 3:59:48 PM | C3838 204 | GSWP | Great Southern Wood | C3838 | 26267 | P3838 | PENGUIN053 3443 | Bundles | 1 X 4 X 12 |
| 8/3/2005 8:29:51 AM | C3468 7393 | Georgia Pacific | Great Southern Wood | C3468 | 26278 | 250872 | PENGUIN053 CMB1D | Bundles | CMB1D |

Delivery Breakdown for Great Southern Wood (in Metric Tons)

| Date / Time | Ticket | Vendor | Company | Car | Weight | Ref | Destination | Code | Unit | Item |
|---|---|---|---|---|---|---|---|---|---|---|
| 8/3/2005 10:11:30 AM | C3840 05-244 | GSWP | Great Southern Wood | C3840 | 26265 | P3840 | PENGUIN053 | 3449 | Bundles | 1 X 8 X 12 |
| 8/3/2005 10:11:30 AM | C3840 05-244 | GSWP | Great Southern Wood | C3840 | 26265 | P3840 | SWAN013 | 3442 | Bundles | 3442 1 X 4 |
| 8/3/2005 10:11:30 AM | C3840 05-244 | GSWP | Great Southern Wood | C3840 | 26265 | P3840 | WEAVER048 | HD608 | Bundles | HD608 |
| 8/3/2005 11:30:05 | C3879 237 | GSWP | Great Southern Wood | C3879 | 26284 | P3679 | WEAVER048 | HD8/10 | Bundles | HD8/10 |
| 8/3/2005 11:54:32 AM | C3467 200 | Georgia Pacific | Great Southern Wood | C3467 | 26277 | 250871 | PENGUIN053 | CMB1D | Bundles | CMB1D |
| 8/3/2005 1:35:14 PM | C3467 7458 | Georgia Pacific | Great Southern Wood | C3469 | 26279 | 250873 | PENGUIN053 | CMB1D | Bundles | CMB1D |
| 8/4/2005 2:50:34 PM | C3470 9 | unknown | Great Southern Wood | C3470 | 26285 | 250874 | PENGUIN053 | CMB1D | Bundles | CMB1D |
| 8/5/2005 1:34:28 PM | C2752 6888 | BOYD TRUCKING | Great Southern Wood | C2752 | 26294 | 366495 | SPRING014 | R8D | Bundles | R8D |
| 8/8/2005 10:41:50 AM | C3471 7393 | Georgia Pacific | Great Southern Wood | C3471 | 26310 | 250875 | PENGUIN053 | CMB1D | Bundles | CMB1D |
| 8/8/2005 8:37:05 AM | C3990 05-214 | GSWP | Great Southern Wood | C3990 | 26339 | 3990 | KESTREL045 | KD1D | Bundles | KD1D |
| 8/10/2005 9:27:25 AM | C3991 223 | GSWP | Great Southern Wood | C3991 | 26344 | 3991 | KESTREL045 | KD1D | Bundles | KD1D |
| 8/10/2005 10:16:37 AM | C3989 220 | GSWP | Great Southern Wood | C3989 | 26338 | 3989 | KESTREL045 | GS661D | Bundles | GS661D |
| 8/10/2005 10:16:37 AM | C3989 220 | GSWP | Great Southern Wood | C3989 | 26336 | 3989 | KESTREL045 | GS661D | Bundles | GS661D |
| 8/10/2005 11:20:05 AM | C3987 5-245 | GSWP | Great Southern Wood | C3987 | 26337 | 3987 | KESTREL045 | GS661D | Bundles | GS661D |
| 8/10/2005 11:20:16 AM | C3988 05-207 | GSWP | Great Southern Wood | C3988 | 26333 | 3988 | KESTREL045 | PP1KD | Bundles | PP1KD |
| 8/10/2005 11:23:11 AM | C4016 5-216 | GSWP | Great Southern Wood | C4018 | 26335 | P04018 | KESTREL045 | CMB1D | Bundles | CMB1D |
| 8/10/2005 11:29:58 AM | C3986 05-244 | GSWP | Great Southern Wood | C3986 | 26335 | 3986 | KESTREL045 | CMB1D | Bundles | CMB1D |
| 8/10/2005 11:29:58 AM | C3986 05-244 | GSWP | Great Southern Wood | C3986 | 26347 | 3986 | KESTREL045 | BAL10A | Bundles | BAL10A |
| 8/10/2005 11:54:07 AM | C4026 5-908 | GSWP | Great Southern Wood | C4026 | 26345 | 4026 | KESTREL045 | GS661D | Bundles | GS661D |
| 8/10/2005 1:50:24 PM | C3992 05-241 | GSWP | Great Southern Wood | C3992 | 26349 | 3992 | KESTREL045 | KD1D | Bundles | KD1D |
| 8/11/2005 9:11:57 AM | C3472 206 | Georgia Pacific | Great Southern Wood | C3472 | 26365 | 250876 | PENGUIN053 | CMB1D | Bundles | CMB1D |
| 8/11/2005 9:50:22 AM | C3993 5-216 | GSWP | Great Southern Wood | C3993 | 3993 | 3993 | KESTREL045 | KD1D | Bundles | KD1D |

AIG00490

tFrom=8/1/20C

Delivery Breakdown for Great Southern Wood (in Metric Tons)

| Date/Time | Ref | Sub | Shipper | Product | Container | No. | Code | Vessel | Unit | Extra |
|---|---|---|---|---|---|---|---|---|---|---|
| 8/19/2005 11:51:53 AM | C4136 | 98-231 | GSWP | Great Southern Wood | C4136 | 26529 | p04-136 | KESTREL/045 | Bundles | BRA-K01C Bundles |
| 8/19/2005 11:51:53 AM | C4136 | 98-231 | GSWP | Great Southern Wood | C4136 | 26529 | p04-136 | PENGUIN/053 3446 | Bundles | 1 X 6 X 12 |
| 8/19/2005 11:51:53 AM | C4136 | 98-231 | GSWP | Great Southern Wood | C4136 | 26529 | p04-136 | SANKO/15 HD6/0 | Bundles | HD6/0 |
| 8/19/2005 11:51:53 AM | C4136 | 98-231 | GSWP | Great Southern Wood | C4136 | 26529 | p04-136 | KESTREL/045 GS461D | Bundles | GS461D |
| 8/19/2005 1:58:32 PM | C4008 | 517 | GSWP | Great Southern Wood | C4008 | 26537 | 4008 | KESTREL/045 CMB1D | Bundles | CMB1D |
| 8/19/2005 2:35:38 PM | C4003 | 504 | Watkins Trucking | Great Southern Wood | C4003 | 26510 | 4003 | KESTREL/045 R144D | Bundles | R144D |
| 8/22/2005 11:07:49 AM | C4020 | 505 | GSWP | Great Southern Wood | C4020 | 26557 | 4020 | KESTREL/045 GS441D | Bundles | GS441D |
| 8/22/2005 11:07:49 AM | C4020 | 505 | GSWP | Great Southern Wood | C4020 | 26557 | 4020 | KESTREL/045 CMB1D | Bundles | CMB1D |
| 8/22/2005 11:07:49 AM | C4020 | 505 | GSWP | Great Southern Wood | C4020 | 26557 | 4020 | KESTREL/045 CMB1D | Bundles | CMB1D |
| 8/22/2005 11:07:49 AM | C4020 | 505 | GSWP | Great Southern Wood | C4020 | 26557 | 4020 | KESTREL/045 CMB1D | Bundles | CMB1D |
| 8/22/2005 11:17:33 AM | C4015 | 98539 | GSWP | Great Southern Wood | C4015 | 26556 | 4015 | KESTREL/045 CMB1D | Bundles | CMB1D |
| 8/22/2005 3:02:38 PM | C4014 | 01-534 | GSWP | Great Southern Wood | C4014 | 26555 | 4014 | KESTREL/045 CMB1D | Bundles | CMB1D |
| 8/22/2005 3:31:35 PM | C4012 | 272 | GSWP | Great Southern Wood | C4012 | 26553 | 4012 | KESTREL/045 CMB1D | Bundles | CMB1D |
| 8/22/2005 3:47:41 PM | C4013 | 57 | SUMER EXPRESS | Great Southern Wood | C4013 | 26554 | 4013 | KESTREL/045 CMB1D | Bundles | CMB1D |
| 8/23/2005 10:10:17 AM | C4173 | 5-537 | SUMER EXPRESS | Great Southern Wood | C4173 | 26614 | p04173 | KESTREL/045 BRAR9D | Bundles | BRAR9D |
| 8/23/2005 10:18:01 AM | C4172 | 501 | GSWP | Great Southern Wood | C4172 | 26613 | p04172 | KESTREL/045 BRAR9D | Bundles | BRAR9D |
| 8/23/2005 10:48:58 AM | C4072 | 548 | GSWP | Great Southern Wood | C4072 | 26607 | P04072 | KESTREL/045 R1D11 | Bundles | R1D11 |
| 8/23/2005 10:54:57 AM | C4109 | 08 | GSWP | Great Southern Wood | C4109 | 26609 | P04109 | PENGUIN/053 3446 | Bundles | 1 X 6 X 12 |
| 8/23/2005 10:54:57 AM | C4109 | 08 | GSWP | Great Southern Wood | C4109 | 26609 | P04109 | PENGUIN/053 AF-4/08 | Bundles | AF-4/08 |
| 8/23/2005 11:51:27 AM | C4087 | 7460 | Georgia Pacific | Great Southern Wood | C4087 | 26591 | 250878 | KESTREL/045 CMB1D | Bundles | CMB1D |
| 8/23/2005 12:00:03 PM | C4021 | 510 | GSWP | Great Southern Wood | C4021 | 26602 | 4021 | KESTREL/045 GS441D | Bundles | GS441D |
| 8/23/2005 12:00:03 PM | C4021 | 510 | GSWP | Great Southern Wood | C4021 | 26602 | 4021 | KESTREL/045 GS441D | Bundles | GS441D |
| 8/23/2005 1:39:58 PM | C4022 | 547 | GSWP | Great Southern Wood | C4022 | 26603 | 4022 | KESTREL/045 CR15DRA | Bundles | CR15DRA |

AIG00494

## Delivery Breakdown for Great Southern Wood (in Metric Tons)

| Date | Ref | Company | Wood | No. | PO/Ref | Carrier | Code | Unit | Size |
|---|---|---|---|---|---|---|---|---|---|
| 8/23/2005 1:57:31 PM | C4023 125 | GSWP | Great Southern Wood | 26604 | 4023 | KESTREL045 | CR15DRA | Bundles | CR15DRA |
| 8/23/2005 2:02:29 PM | C4070 535 | GSWP | Great Southern Wood | 26605 | PO4070 | KESTREL045 | R1D11 | Bundles | R1D11 |
| 8/23/2005 2:55:42 PM | C4011 522L | Watkins Trucking | Great Southern Wood | 26615 | 4011 | KESTREL045 | CMB1D | Bundles | CMB1D |
| 8/23/2005 3:04:31 PM | C4071 502 | GSWP | Great Southern Wood | 26606 | PO4071 | KESTREL045 | R1D11 | Bundles | R1D11 |
| 8/23/2005 3:55:08 PM | C4073 500 | GSWP | Great Southern Wood | 26608 | PO4073 | R6B8D | R6B8D | Bundles | R6B8D |
| 8/23/2005 3:59:52 PM | C4170 529 | GSWP | Great Southern Wood | 26611 | PO4170 | KESTREL045 | BRAR9D | Bundles | BRAR9D |
| 8/23/2005 4:00:53 PM | C4171 540 | GSWP | Great Southern Wood | 26612 | PO4171 | KESTREL045 | BRAR9D | Bundles | BRAR9D |
| 8/23/2005 4:55:07 PM | C3457 106 | unknown | Great Southern Wood | 26556 | 254005 | PENGUIN053 | KD1D | Bundles | KD1D |
| 8/23/2005 4:55:07 PM | C3457 106 | unknown | Great Southern Wood | 26558 | 254005 | PENGUIN053 | CMB1D | Bundles | CMB1D |
| 8/24/2005 10:18:47 AM | C4088 207 | Georgia Pacific | Great Southern Wood | 26625 | 250879 | PENGUIN053 | CMB1D | Bundles | CMB1D |
| 8/24/2005 10:41:40 AM | C4175 541 | GSWP | Great Southern Wood | 26630 | PO4175 | KESTREL045 | 3443 | Bundles | 1 X 4 X 12 |
| 8/24/2005 11:37:10 AM | C4174 520 | GSWP | Great Southern Wood | 26629 | PO4174 | KESTREL045 | 3443 | Bundles | 1 X 4 X 12 |
| 8/24/2005 2:34:05 PM | C4110 545 | GSWP | Great Southern Wood | 26610 | PO4110 | PENGUIN053 | 3443 | Bundles | BRAR9D |
| 8/24/2005 2:34:05 PM | C4286 1709 | Nuss Lumber | Great Southern Wood | 26649 | MW-12374 | KESTREL045 | L4/06 | Bundles | L4/06 |
| 8/25/2005 11:52:54 AM | C4090 7385 | Georgia Pacific | Great Southern Wood | 26664 | 250881 | KESTREL045 | CMB1D | Bundles | CMB1D |
| 8/25/2005 2:12:14 AM | C4089 7396 | Georgia Pacific | Great Southern Wood | 26663 | 250880 | KESTREL045 | CMB1D | Bundles | CMB1D |
| 8/25/2005 2:35:57 PM | C2039 125 | GSWP | Great Southern Wood | 26662 | 804939 | WEAVER048 | GS1DS | Bundles | GS1DS |
| 8/26/2005 1:28:57 PM | C4091 219 | Georgia Pacific | Great Southern Wood | 26657 | 250882 | KESTREL045 | CMB1D | Bundles | CMB1D |
| 8/26/2005 1:28:57 PM | C4091 219 | Georgia Pacific | Great Southern Wood | 26657 | 250882 | KESTREL045 | CMB1D | Bundles | CMB1D |
| 8/31/2005 11:24:00 AM | C4086 219 | Georgia Pacific | Great Southern Wood | 26590 | 250877 | KESTREL045 | CMB1D | Bundles | BRA-KD1D |

# Exhibit B

Exhibit B

Remit Payment To:                         REF:   326010-4086



**Great Southern Wood Preserving**
Wachovia/Great Southern Wood Preserving
PO Box 934412
Atlanta, GA 31193-4412

| Invoice # | Invoice Date | Due Date |
|---|---|---|
| IM3788 | 08/16/2005 | 8/26/2005 |
| **Rep #** | **Order Date** | **PO #** |
| 60 | 08/15/2005 | 250877 |

Notes:

| Customer # | Shipped To: | G.P. Louisville | | | |
|---|---|---|---|---|---|
| 326010 | | | | | |
| **Terms** | | Louisville | AL | | |
| Net 10 | | | | | |

| | |
|---|---|
| Discountable Amount: | $0.00 |
| Freight (Per M): | $0.00 |
| Freight Charge: | $0.00 |
| Tax: | $0.00 |
| Fuel Surcharge: | $0.00 |
| Misc. Discount: | $0.00 |
| Total Amount: | **$9,525.60** |

| Item # | Qty | Description | Board Ft | Unit Price M / E | Amount |
|---|---|---|---|---|---|
| 0210900 | 10,080 | 1X6-6' DE FENCE WHITE | 30,240.00 | $315.000 / $0.945 | $9,525.60 |
| | **10,080** | | **30,240.00** | | |

**Great Southern Wood Preserving**
PO Box 610 - HWY 431 North
Abbeville, AL 36310
(334) 585-6617

**GEORGIA-PACIFIC MONTGOMERY**      GSWP    750
3077 CARTER HILL ROAD
MONTGOMERY          AL        36111



Remit Payment To:    REF:  326010-4087

**Great Southern Wood Preserving**
Wachovia/Great Southern Wood Preserving
PO Box 934412
Atlanta, GA 31193-4412

| Invoice # | Invoice Date | Due Date |
|---|---|---|
| IM3789 | 08/16/2005 | 8/26/2005 |
| **Rep #** | **Order Date** | **PO #** |
| 60 | 08/15/2005 | 250878 |

Notes:

| Customer # | | | | | |
|---|---|---|---|---|---|
| 326010 | | | | | |

Shipped To:  G.P. Louisville

Louisville         AL

**Terms**
Net 10

| | Amount |
|---|---|
| Discountable Amount: | $0.00 |
| Freight (Per M): | $0.00 |
| Freight Charge: | $0.00 |
| Tax: | $0.00 |
| Fuel Surcharge: | $0.00 |
| Misc. Discount: | $0.00 |
| Total Amount: | **$9,525.60** |

| Item # | Qty | Description | Board Ft | Unit Price M / E | Amount |
|---|---|---|---|---|---|
| 0210900 | 10,080 | 1X6-6' DE FENCE WHITE | 30,240.00 | $315.000 / $0.945 | $9,525.60 |
| | **10,080** | | **30,240.00** | | |



**Great Southern Wood Preserving**
PO Box 610 - HWY 431 North
Abbeville, AL 36310
(334) 585-6617

**GEORGIA-PACIFIC MONTGOMERY**
3077 CARTER HILL ROAD
MONTGOMERY        AL        36111        GSWP        751

Remit Payment To:                    REF:  326010-4088



**Great Southern Wood Preserving**
Wachovia/Great Southern Wood Preserving
PO Box 934412
Atlanta, GA 31193-4412

| Invoice # | Invoice Date | Due Date |
|---|---|---|
| IM3790 | 08/16/2005 | 8/26/2005 |
| Rep # | Order Date | PO # |
| 60 | 08/15/2005 | 250879 |

Notes:

| Customer # | | | Shipped To: | G.P. Louisville | | |
|---|---|---|---|---|---|---|
| 326010 | | | | | | |
| Terms | | | | Louisville | AL | |
| Net 10 | | | | | | |

| | |
|---|---|
| Discountable Amount: | $0.00 |
| Freight (Per M): | $0.00 |
| Freight Charge: | $0.00 |
| Tax: | $0.00 |
| Fuel Surcharge: | $0.00 |
| Misc. Discount: | $0.00 |
| Total Amount: | **$9,525.60** |

| Item # | Qty | Description | Board Ft | Unit Price M / E | Amount |
|---|---|---|---|---|---|
| 0210900 | 10,080 | 1X6-6' DE FENCE WHITE | 30,240.00 | $315.000 / $0.945 | $9,525.60 |
| | **10,080** | | **30,240.00** | | |

**Great Southern Wood Preserving**
PO Box 610 - HWY 431 North
Abbeville, AL 36310
(334) 585-6617

**GEORGIA-PACIFIC MONTGOMERY**
3077 CARTER HILL ROAD
MONTGOMERY          AL          36111

GSWP     752

Remit Payment To:



**GREAT SOUTHERN WOOD PRESERVING**

REF: 326010-4089

**Great Southern Wood Preserving**
Wachovia/Great Southern Wood Preserving
PO Box 934412
Atlanta, GA 31193-4412

| Invoice # | Invoice Date | Due Date |
|---|---|---|
| IM3791 | 08/16/2005 | 8/26/2005 |
| **Rep #** | **Order Date** | **PO #** |
| 60 | 08/15/2005 | 250880 |

Notes:

| Customer # | | Discountable Amount: | $0.00 |
|---|---|---|---|
| 326010 | | Freight (Per M): | $0.00 |
| **Terms** | Shipped To: G.P. Louisville | Freight Charge: | $0.00 |
| Net 10 | Louisville        AL | Tax: | $0.00 |
| | | Fuel Surcharge: | $0.00 |
| | | Misc. Discount: | $0.00 |
| | | Total Amount: | **$9,525.60** |

| Item # | Qty | Description | Board Ft | Unit Price M / E | Amount |
|---|---|---|---|---|---|
| 0210900 | 10,080 | 1X6-6' DE FENCE WHITE | 30,240.00 | $315.000 / $0.945 | $9,525.60 |
| | 10,080 | | 30,240.00 | | |

**Great Southern Wood Preserving**
PO Box 610 - HWY 431 North
Abbeville, AL 36310
(334) 585-6617

GSWP    753

**GEORGIA-PACIFIC MONTGOMERY**
3077 CARTER HILL ROAD
MONTGOMERY            AL        36111

Remit Payment To:                    REF:   326010-4090                    **Invoice #**      **Invoice Date**      **Due Date**
                                                                           IM3792            08/16/2005           8/26/2005
                 **Great Southern Wood Preserving**    **Rep #**         **Order Date**       **PO #**
                                     Wachovia/Great Southern Wood Preserving  60             08/15/2005           250881
                                     PO Box 934412                         Notes:
                                     Atlanta, GA 31193-4412

| Customer # | Shipped | G.P. Louisville | | | Discountable Amount: | $0.00 |
|---|---|---|---|---|---|---|
| 326010 | To: | | | | Freight (Per M): | $0.00 |
| **Terms** | | Louisville | AL | | Freight Charge: | $0.00 |
| Net 10 | | | | | Tax: | $0.00 |
| | | | | | Fuel Surcharge: | $0.00 |
| | | | | | Misc. Discount: | $0.00 |
| | | | | | **Total Amount:** | **$9,525.60** |

| Item # | Qty | Description | Board Ft | Unit Price M / E | Amount |
|---|---|---|---|---|---|
| 0210900 | 10,080 | 1X6-6' DE FENCE WHITE | 30,240.00 | $315.000 / $0.945 | $9,525.60 |
| | **10,080** | | **30,240.00** | | |

**Great Southern Wood Preserving**
PO Box 610 - HWY 431 North
Abbeville, AL 36310
(334) 585-6617

GEORGIA-PACIFIC MONTGOMERY        GSWP      754
3077 CARTER HILL ROAD
MONTGOMERY              AL        36111

Remit Payment To:              REF:  326010-4091



**Great Southern Wood Preserving**
Wachovia/Great Southern Wood Preserving
PO Box 934412
Atlanta, GA 31193-4412

| Invoice # | Invoice Date | Due Date |
|---|---|---|
| IM3793 | 08/16/2005 | 8/26/2005 |
| Rep # | Order Date | PO # |
| 60 | 08/15/2005 | 250882 |

Notes:

| Customer # | Shipped To: | G.P. Louisville | | | |
|---|---|---|---|---|---|
| 326010 | | | | | |
| **Terms** | | Louisville | AL | | |
| Net 10 | | | | | |

| | |
|---|---|
| Discountable Amount: | $0.00 |
| Freight (Per M): | $0.00 |
| Freight Charge: | $0.00 |
| Tax: | $0.00 |
| Fuel Surcharge: | $0.00 |
| Misc. Discount: | $0.00 |
| Total Amount: | **$9,525.60** |

| Item # | Qty | Description | Board Ft | Unit Price M / E | Amount |
|---|---|---|---|---|---|
| 0210900 | 10,080 | 1X6-6' DE FENCE WHITE | 30,240.00 | $315.000 / $0.945 | $9,525.60 |
| | 10,080 | | 30,240.00 | | |

**Great Southern Wood Preserving**
PO Box 610 - HWY 431 North
Abbeville, AL 36310
(334) 585-6617

GSWP      755

**GEORGIA-PACIFIC MONTGOMERY**
3077 CARTER HILL ROAD
MONTGOMERY        AL        36111



Remit Payment To:



**GREAT SOUTHERN WOOD PRESERVING**

REF:  326010-4092

**Great Southern Wood Preserving**
Wachovia/Great Southern Wood Preserving
PO Box 934412
Atlanta, GA 31193-4412

| Invoice # | Invoice Date | Due Date |
|---|---|---|
| IM3794 | 08/16/2005 | 8/26/2005 |
| Rep # | Order Date | PO # |
| 60 | 08/15/2005 | 250883 |

Notes:

| Customer # | Shipped To: | G.P. Louisville | | |
|---|---|---|---|---|
| 326010 | | | | |
| **Terms** | | Louisville | AL | |
| Net 10 | | | | |

| | |
|---|---|
| Discountable Amount: | $0.00 |
| Freight (Per M): | $0.00 |
| Freight Charge: | $0.00 |
| Tax: | $0.00 |
| Fuel Surcharge: | $0.00 |
| Misc. Discount: | $0.00 |
| Total Amount: | **$9,525.60** |

| Item # | Qty | Description | Board Ft | Unit Price M / E | Amount |
|---|---|---|---|---|---|
| 0210900 | 10,080 | 1X6-6' DE FENCE WHITE | 30,240.00 | $315.000 / $0.945 | $9,525.60 |
| | 10,080 | | 30,240.00 | | |



**Great Southern Wood Preserving**
PO Box 610 - HWY 431 North
Abbeville, AL 36310
(334) 585-6617

GSWP    756

**GEORGIA-PACIFIC MONTGOMERY**
3077 CARTER HILL ROAD
MONTGOMERY        AL        36111

Remit Payment To:                    REF:  326010-4093



**Great Southern Wood Preserving**
Wachovia/Great Southern Wood Preserving
PO Box 934412
Atlanta, GA 31193-4412

| Invoice # | Invoice Date | Due Date |
|---|---|---|
| IM3795 | 08/16/2005 | 8/26/2005 |
| Rep # | Order Date | PO # |
| 60 | 08/15/2005 | 250884 |

Notes:

| Customer # | | | | Discountable Amount: | $0.00 |
|---|---|---|---|---|---|
| 326010 | Shipped To: | G.P. Louisville | | Freight (Per M): | $0.00 |
| Terms | | | | Freight Charge: | $0.00 |
| Net 10 | | Louisville | AL | Tax: | $0.00 |
| | | | | Fuel Surcharge: | $0.00 |
| | | | | Misc. Discount: | $0.00 |
| | | | | Total Amount: | **$9,525.60** |

| Item # | Qty | Description | Board Ft | Unit Price M / E | Amount |
|---|---|---|---|---|---|
| 0210900 | 10,080 | 1X6-6' DE FENCE WHITE | 30,240.00 | $315.000 / $0.945 | $9,525.60 |
| | **10,080** | | **30,240.00** | | |

**Great Southern Wood Preserving**
PO Box 610 - HWY 431 North
Abbeville, AL 36310
(334) 585-6617

GSWP    757

**GEORGIA-PACIFIC MONTGOMERY**
3077 CARTER HILL ROAD
MONTGOMERY        AL        36111

Remit Payment To:



GREAT SOUTHERN
WOOD PRESERVING

REF:  326010-4094
**Great Southern Wood Preserving**
Wachovia/Great Southern Wood Preserving
PO Box 934412
Atlanta, GA 31193-4412

| Invoice # | Invoice Date | Due Date |
|---|---|---|
| IM3796 | 08/16/2005 | 8/26/2005 |
| Rep # | Order Date | PO # |
| 60 | 08/15/2005 | 250885 |

Notes:

| Customer # | | Shipped To: | G.P. Louisville | | Discountable Amount: | $0.00 |
|---|---|---|---|---|---|---|
| 326010 | | | | | Freight (Per M): | $0.00 |
| Terms | | | Louisville | AL | Freight Charge: | $0.00 |
| Net 10 | | | | | Tax: | $0.00 |
| | | | | | Fuel Surcharge: | $0.00 |
| | | | | | Misc. Discount: | $0.00 |
| | | | | | Total Amount: | **$9,525.60** |

| Item # | Qty | Description | Board Ft | Unit Price M / E | Amount |
|---|---|---|---|---|---|
| 0210900 | 10,080 | 1X6-6' DE FENCE WHITE | 30,240.00 | $315.000 / $0.945 | $9,525.60 |
| | 10,080 | | 30,240.00 | | |

**Great Southern Wood Preserving**
PO Box 610 - HWY 431 North
Abbeville, AL 36310
(334) 585-6617

**GEORGIA-PACIFIC MONTGOMERY**    GSWP    758
3077 CARTER HILL ROAD
MONTGOMERY        AL        36111

Remit Payment To:



**GREAT SOUTHERN WOOD PRESERVING**

REF: 326010-4095

**Great Southern Wood Preserving**
Wachovia/Great Southern Wood Preserving
PO Box 934412
Atlanta, GA 31193-4412

| Invoice # | Invoice Date | Due Date |
|---|---|---|
| IM3797 | 08/16/2005 | 8/26/2005 |
| **Rep #** | **Order Date** | **PO #** |
| 60 | 08/15/2005 | 250886 |

Notes:

| Customer # | Shipped To: | G.P. Louisville | | |
|---|---|---|---|---|
| 326010 | | | | |
| **Terms** | | Louisville | AL | |
| Net 10 | | | | |

| | |
|---|---|
| Discountable Amount: | $0.00 |
| Freight (Per M): | $0.00 |
| Freight Charge: | $0.00 |
| Tax: | $0.00 |
| Fuel Surcharge: | $0.00 |
| Misc. Discount: | $0.00 |
| **Total Amount:** | **$9,525.60** |

| Item # | Qty | Description | Board Ft | Unit Price M / E | Amount |
|---|---|---|---|---|---|
| 0210900 | 10,080 | 1X6-6' DE FENCE WHITE | 30,240.00 | $315.000 / $0.945 | $9,525.60 |
| | **10,080** | | **30,240.00** | | |

**Great Southern Wood Preserving**
PO Box 610 - HWY 431 North
Abbeville, AL 36310
(334) 585-6617

**GEORGIA-PACIFIC MONTGOMERY**
3077 CARTER HILL ROAD
MONTGOMERY        AL        36111

GSWP    759

Remit Payment To:                REF:  326010-4096



**Great Southern Wood Preserving**
Wachovia/Great Southern Wood Preserving
PO Box 934412
Atlanta, GA 31193-4412

| Invoice # | Invoice Date | Due Date |
|---|---|---|
| IM3798 | 08/16/2005 | 8/26/2005 |
| Rep # | Order Date | PO # |
| 60 | 08/15/2005 | 254011 |

Notes:

| Customer # | Shipped | G.P. Montgomery |
|---|---|---|
| 326010 | To: | 3077 CARTER HILL ROAD |

Montgomery          AL

Terms
Net 10

| | |
|---|---|
| Discountable Amount: | $0.00 |
| Freight (Per M): | $0.00 |
| Freight Charge: | $0.00 |
| Tax: | $0.00 |
| Fuel Surcharge: | $0.00 |
| Misc. Discount: | $0.00 |
| Total Amount: | **$9,525.60** |

| Item # | Qty | Description | Board Ft | Unit Price M / E | Amount |
|---|---|---|---|---|---|
| 0210900 | 10,080 | 1X6-6' DE FENCE WHITE | 30,240.00 | $315.000 / $0.945 | $9,525.60 |
| | **10,080** | | **30,240.00** | | |

**Great Southern Wood Preserving**
PO Box 610 - HWY 431 North
Abbeville, AL 36310
(334) 585-6617

**GEORGIA-PACIFIC MONTGOMERY**
3077 CARTER HILL ROAD
MONTGOMERY          AL          36111          GSWP          760

Remit Payment To:



REF:  326010-4097
**Great Southern Wood Preserving**
Wachovia/Great Southern Wood Preserving
PO Box 934412
Atlanta, GA 31193-4412

| Invoice # | Invoice Date | Due Date |
|---|---|---|
| IM3799 | 08/16/2005 | 8/26/2005 |
| Rep # | Order Date | PO # |
| 60 | 08/15/2005 | 254012 |

Notes:

| Customer # | | Shipped | |
|---|---|---|---|
| 326010 | | To: | G.P. Montgomery |
| | | | 3077 CARTER HILL ROAD |
| Terms | | | Montgomery        AL |
| Net 10 | | | |

| | |
|---|---|
| Discountable Amount: | $0.00 |
| Freight (Per M): | $0.00 |
| Freight Charge: | $0.00 |
| Tax: | $0.00 |
| Fuel Surcharge: | $0.00 |
| Misc. Discount: | $0.00 |
| Total Amount: | **$9,525.60** |

| Item # | Qty | Description | Board Ft | Unit Price M / E | Amount |
|---|---|---|---|---|---|
| 0210900 | 10,080 | 1X6-6' DE FENCE WHITE | 30,240.00 | $315.000 / $0.945 | $9,525.60 |
| | **10,080** | | **30,240.00** | | |

**Great Southern Wood Preserving**
PO Box 610 - HWY 431 North
Abbeville, AL 36310
(334) 585-6617

**GEORGIA-PACIFIC MONTGOMERY**        GSWP        761
3077 CARTER HILL ROAD
MONTGOMERY        AL        36111



Remit Payment To:



REF: 326010-4098

**Great Southern Wood Preserving**
Wachovia/Great Southern Wood Preserving
PO Box 934412
Atlanta, GA 31193-4412

| Invoice # | Invoice Date | Due Date |
|---|---|---|
| IM3800 | 08/16/2005 | 8/26/2005 |
| Rep # | Order Date | PO # |
| 60 | 08/15/2005 | 254013 |

Notes:

| Customer # | | | | | |
|---|---|---|---|---|---|
| 326010 | **Shipped To:** | G.P. Montgomery | | | |
| **Terms** | | 3077 CARTER HILL ROAD | | | |
| Net 10 | | Montgomery      AL | | | |

| | | |
|---|---|---|
| Discountable Amount: | | $0.00 |
| Freight (Per M): | | $0.00 |
| Freight Charge: | | $0.00 |
| Tax: | | $0.00 |
| Fuel Surcharge: | | $0.00 |
| Misc. Discount: | | $0.00 |
| Total Amount: | | **$9,525.60** |

| Item # | Qty | Description | Board Ft | Unit Price M / E | Amount |
|---|---|---|---|---|---|
| 0210900 | 10,080 | 1X6-6' DE FENCE WHITE | 30,240.00 | $315.000 / $0.945 | $9,525.60 |
| | **10,080** | | **30,240.00** | | |



**Great Southern Wood Preserving**
PO Box 610 - HWY 431 North
Abbeville, AL 36310
(334) 585-6617

**GEORGIA-PACIFIC MONTGOMERY**
3077 CARTER HILL ROAD
MONTGOMERY    AL    36111      GSWP   762

Remit Payment To:

REF: 326010-4099

**Great Southern Wood Preserving**
Wachovia/Great Southern Wood Preserving
PO Box 934412
Atlanta, GA 31193-4412

| | | |
|---|---|---|
| Invoice # | Invoice Date | Due Date |
| IM3801 | 08/16/2005 | 8/26/2005 |
| Rep # | Order Date | PO # |
| 60 | 08/15/2005 | 254014 |

Notes:

| | |
|---|---|
| Customer # | |
| 326010 | |
| Terms | |
| Net 10 | |

Shipped To:
G.P. Montgomery
3077 CARTER HILL ROAD
Montgomery          AL

| | |
|---|---|
| Discountable Amount: | $0.00 |
| Freight (Per M): | $0.00 |
| Freight Charge: | $0.00 |
| Tax: | $0.00 |
| Fuel Surcharge: | $0.00 |
| Misc. Discount: | $0.00 |
| Total Amount: | **$9,525.60** |

| Item # | Qty | Description | Board Ft | Unit Price M / E | Amount |
|---|---|---|---|---|---|
| 0210900 | 10,080 | 1X6-6' DE FENCE WHITE | 30,240.00 | $315.000 / $0.945 | $9,525.60 |
| | 10,080 | | 30,240.00 | | |



**Great Southern Wood Preserving**
PO Box 610 - HWY 431 North
Abbeville, AL 36310
(334) 585-6617

**GEORGIA-PACIFIC MONTGOMERY**
3077 CARTER HILL ROAD
MONTGOMERY          AL          36111

GSWP     763

Remit Payment To:      REF:  326010-4100



**Great Southern Wood Preserving**
Wachovia/Great Southern Wood Preserving
PO Box 934412
Atlanta, GA 31193-4412

| Invoice # | Invoice Date | Due Date |
|---|---|---|
| IM3802 | 08/16/2005 | 8/26/2005 |
| Rep # | Order Date | PO # |
| 60 | 08/15/2005 | 254015 |

Notes:

| Customer # | Shipped To: | G.P. Montgomery |
|---|---|---|
| 326010 | | 3077 CARTER HILL ROAD |
| Terms | | Montgomery          AL |
| Net 10 | | |

| | |
|---|---|
| Discountable Amount: | $0.00 |
| Freight (Per M): | $0.00 |
| Freight Charge: | $0.00 |
| Tax: | $0.00 |
| Fuel Surcharge: | $0.00 |
| Misc. Discount: | $0.00 |
| Total Amount: | **$9,525.60** |

| Item # | Qty | Description | Board Ft | Unit Price M / E | Amount |
|---|---|---|---|---|---|
| 0210900 | 10,080 | 1X6-6' DE FENCE WHITE | 30,240.00 | $315.000 / $0.945 | $9,525.60 |
| | 10,080 | | 30,240.00 | | |

**Great Southern Wood Preserving**
PO Box 610 - HWY 431 North
Abbeville, AL 36310
(334) 585-6617

GEORGIA-PACIFIC MONTGOMERY
3077 CARTER HILL ROAD
MONTGOMERY          AL          36111

GSWP          764

Remit Payment To:

REF: 326010-4101



**Great Southern Wood Preserving**
Wachovia/Great Southern Wood Preserving
PO Box 934412
Atlanta, GA 31193-4412

| Invoice # | Invoice Date | Due Date |
|---|---|---|
| IM3803 | 08/16/2005 | 8/26/2005 |
| Rep # | Order Date | PO # |
| 60 | 08/15/2005 | 254016 |

Notes:

| Customer # | | | | Discountable Amount: | $0.00 |
|---|---|---|---|---|---|
| 326010 | Shipped | G.P. Montgomery | | Freight (Per M): | $0.00 |
| | To: | 3077 CARTER HILL ROAD | | Freight Charge: | $0.00 |
| Terms | | Montgomery        AL | | Tax: | $0.00 |
| Net 10 | | | | Fuel Surcharge: | $0.00 |
| | | | | Misc. Discount: | $0.00 |
| | | | | Total Amount: | **$9,525.60** |

| Item # | Qty | Description | Board Ft | Unit Price M / E | Amount |
|---|---|---|---|---|---|
| 0210900 | 10,080 | 1X6-6' DE FENCE WHITE | 30,240.00 | $315.000 / $0.945 | $9,525.60 |
| | **10,080** | | **30,240.00** | | |

**Great Southern Wood Preserving**
PO Box 610 - HWY 431 North
Abbeville, AL 36310
(334) 585-6617

**GEORGIA-PACIFIC MONTGOMERY**
3077 CARTER HILL ROAD
MONTGOMERY          AL          36111      GSWP      765

Remit Payment To:


GREAT SOUTHERN
WOOD PRESERVING

REF:  326010-4102

**Great Southern Wood Preserving**
Wachovia/Great Southern Wood Preserving
PO Box 934412
Atlanta, GA 31193-4412

| Invoice # | Invoice Date | Due Date |
|---|---|---|
| IM3804 | 08/16/2005 | 8/26/2005 |
| Rep # | Order Date | PO # |
| 60 | 08/15/2005 | 254017 |

Notes:

| Customer # | | Shipped | G.P. Montgomery |
|---|---|---|---|
| 326010 | | To: | 3077 CARTER HILL ROAD |
| Terms | | | Montgomery          AL |
| Net 10 | | | |

| | |
|---|---|
| Discountable Amount: | $0.00 |
| Freight (Per M): | $0.00 |
| Freight Charge: | $0.00 |
| Tax: | $0.00 |
| Fuel Surcharge: | $0.00 |
| Misc. Discount: | $0.00 |
| Total Amount: | **$9,525.60** |

| Item # | Qty | Description | Board Ft | Unit Price M / E | Amount |
|---|---|---|---|---|---|
| 0210900 | 10,080 | 1X6-6' DE FENCE WHITE | 30,240.00 | $315.000 / $0.945 | $9,525.60 |
| | **10,080** | | **30,240.00** | | |

**Great Southern Wood Preserving**
PO Box 610 - HWY 431 North
Abbeville, AL 36310
(334) 585-6617

**GEORGIA-PACIFIC MONTGOMERY**
3077 CARTER HILL ROAD
MONTGOMERY          AL          36111          GSWP     766

Remit Payment To:


**GREAT SOUTHERN WOOD PRESERVING**

REF:   326010-4103

**Great Southern Wood Preserving**
Wachovia/Great Southern Wood Preserving
PO Box 934412
Atlanta, GA 31193-4412

| Invoice # | Invoice Date | Due Date |
|---|---|---|
| IM3805 | 08/16/2005 | 8/26/2005 |
| Rep # | Order Date | PO # |
| 60 | 08/15/2005 | 254018 |

Notes:

| Customer # | | | |
|---|---|---|---|
| 326010 | | | |

Shipped To: G.P. Montgomery
3077 CARTER HILL ROAD
Montgomery        AL

**Terms**
Net 10

| | |
|---|---|
| Discountable Amount: | $0.00 |
| Freight (Per M): | $0.00 |
| Freight Charge: | $0.00 |
| Tax: | $0.00 |
| Fuel Surcharge: | $0.00 |
| Misc. Discount: | $0.00 |
| **Total Amount:** | **$9,525.60** |

| Item # | Qty | Description | Board Ft | Unit Price M / E | Amount |
|---|---|---|---|---|---|
| 0210900 | 10,080 | 1X6-6' DE FENCE WHITE | 30,240.00 | $315.000 / $0.945 | $9,525.60 |
| | **10,080** | | **30,240.00** | | |

**Great Southern Wood Preserving**
PO Box 610 - HWY 431 North
Abbeville, AL 36310
(334) 585-6617

**GEORGIA-PACIFIC MONTGOMERY**
3077 CARTER HILL ROAD
MONTGOMERY        AL        36111

GSWP    767

Remit Payment To:



GREAT SOUTHERN
WOOD PRESERVING

REF:  326010-4104

**Great Southern Wood Preserving**
Wachovia/Great Southern Wood Preserving
PO Box 934412
Atlanta, GA 31193-4412

| Invoice # | Invoice Date | Due Date |
|---|---|---|
| IM3806 | 08/16/2005 | 8/26/2005 |
| Rep # | Order Date | PO # |
| 60 | 08/15/2005 | 254019 |

Notes:

| Customer # | Shipped To: | G.P. Montgomery | | |
|---|---|---|---|---|
| 326010 | | 3077 CARTER HILL ROAD | | |
| **Terms** | | Montgomery        AL | | |
| Net 10 | | | | |

| | |
|---|---|
| Discountable Amount: | $0.00 |
| Freight (Per M): | $0.00 |
| Freight Charge: | $0.00 |
| Tax: | $0.00 |
| Fuel Surcharge: | $0.00 |
| Misc. Discount: | $0.00 |
| Total Amount: | **$9,525.60** |

| Item # | Qty | Description | Board Ft | Unit Price M / E | Amount |
|---|---|---|---|---|---|
| 0210900 | 10,080 | 1X6-6' DE FENCE WHITE | 30,240.00 | $315.000 / $0.945 | $9,525.60 |
| | **10,080** | | **30,240.00** | | |

**Great Southern Wood Preserving**
PO Box 610 - HWY 431 North
Abbeville, AL 36310
(334) 585-6617

*GSWP*   *768*

**GEORGIA-PACIFIC MONTGOMERY**
3077 CARTER HILL ROAD
MONTGOMERY        AL        36111

Remit Payment To:



**GREAT SOUTHERN WOOD PRESERVING**

REF:  326010-4105

**Great Southern Wood Preserving**
Wachovia/Great Southern Wood Preserving
PO Box 934412
Atlanta, GA 31193-4412

| Invoice # | Invoice Date | Due Date |
|-----------|--------------|----------|
| IM3807 | 08/16/2005 | 8/26/2005 |
| Rep # | Order Date | PO # |
| 60 | 08/15/2005 | 254020 |

Notes:

| Customer # | Shipped To: | G.P. Montgomery |
|------------|-------------|------------------|
| 326010 | | 3077 CARTER HILL ROAD |
| **Terms** | | Montgomery    AL |
| Net 10 | | |

| | |
|---|---|
| Discountable Amount: | $0.00 |
| Freight (Per M): | $0.00 |
| Freight Charge: | $0.00 |
| Tax: | $0.00 |
| Fuel Surcharge: | $0.00 |
| Misc. Discount: | $0.00 |
| Total Amount: | **$9,525.60** |

| Item # | Qty | Description | Board Ft | Unit Price M / E | Amount |
|--------|-----|-------------|----------|------------------|--------|
| 0210900 | 10,080 | 1X6-6' DE FENCE WHITE | 30,240.00 | $315.000 / $0.945 | $9,525.60 |
| | 10,080 | | 30,240.00 | | |

**Great Southern Wood Preserving**
PO Box 610 - HWY 431 North
Abbeville, AL 36310
(334) 585-6617

**GEORGIA-PACIFIC MONTGOMERY**
3077 CARTER HILL ROAD
MONTGOMERY        AL        36111        GSWP        769

# Exhibit C

Exhibit C

**RICHARD MURRAY & CO, INC.**

P.O. DRAWER 30
MOBILE, AL 36601
Phone: 251-432-5549  Fax: 251-432-2810

## INVOICE

SERVICES BILLED TO:

GREAT SOUTHERN WOOD PRESERVING I
P.O. BOX 610
ABBEVILLE, AL  36310

| ACCT. NO. | INVOICE NO. |
|---|---|
| GRESOU | 3967-05 |
| INVOICE DATE | FILE NO. |
| 09/09/2005 | 3967-05 |
| DUE DATE | YOUR REFERENCE NO. |
| 09/24/2005 | |
| TERMS | |
| NET 15 DAYS | |

| AIRLINE/STEAMSHIP | | MASTER | HOUSE |
|---|---|---|---|
| SANKO STREAM 019 | | GBUL SSR019CMP106 | |

| ARRIVAL DATE | DEPARTURE DATE | SHIPPER/CONSIGNEE | ORIGIN/DESTINATION |
|---|---|---|---|
| 08/25/2005 | 07/27/2005 | FORESTAL GYS | CAMPANA, ARG. |
| PIECES | WEIGHT | GREAT SOUTHERN WOOD PRESERVING I | GULFPORT, MS |
| 154 | 79,608 | | |

| DATE OF ENTRY | ENTRY # | DESCRIPTION |
|---|---|---|
| 08/25/2005 | 990-0899813-2 | RADIATA PINE DOG EAR |

| | | |
|---|---|---|
| CUSTOMS DUTY | | 71.72 |
| CUSTOMS ENTRY FEE | | 110.00 |

THE IMPORTER MUST
FURNISH MISSING
DOCUMENTS WITHIN THE
PERIOD OF TIME
REQUIRED BY CUSTOMS
REGULATIONS TO AVOID
CUSTOM PENALTIES

*101023*
*Tradex inv*
*004-00015*

| SUBTOTAL | 181.72 |
|---|---|
| INTEREST | 0.00 |
| LESS DEPOSIT | 0.00 |
| PLEASE PAY THIS AMOUNT | 181.72 |

REMARKS:
CUSTOMS CLEARED IN GULFPORT

**AIG00703**

IMPORTANT: SEE TERMS AND CONDITIONS OF SERVICE ON REVERSE SIDE.

If you are the importer of record, payment to the broker will not relieve you of liability for Customs charges (duties, taxes or other debts owed Customs) in
the event the charges are not paid by the broker. Therefore, if you pay by check, Customs charges may be paid with a separate check payable to the
"U.S. Customs Service" which shall be delivered to Customs by the broker.

ORIGINAL INVOICE

**RICHARD MURRAY & CO, INC.**

P.O. DRAWER 30
MOBILE, AL 36601
Phone: 251-432-5849  Fax: 251-432-2810

# INVOICE

SERVICES BILLED TO:

GREAT SOUTHERN WOOD PRESERVING I
P.O. BOX 610
ABBEVILLE, AL  36310

| ACCT. NO. GRESOU | INVOICE NO. 3839-05 |
|---|---|
| INVOICE DATE 09/09/2005 | FILE NO. 3839-05 |
| DUE DATE 09/24/2005 | YOUR REFERENCE NO. |
| TERMS NET 15 DAYS | |

| AIRLINE/STEAMSHIP SANKO STREAM 019 | MASTER GBUL SSR019FGA20B | HOUSE |
|---|---|---|

| ARRIVAL DATE 08/25/2005 | DEPARTURE DATE 08/05/2005 | SHIPPER/CONSIGNEE GLOBAL FIBER | ORIGIN/DESTINATION PARANAGUA, ANTONINA, |
|---|---|---|---|
| PIECES 3,907 | WEIGHT 1,775,720 KGS | GREAT SOUTHERN WOOD PRESERVING I | GULFPORT, MS |

| DATE OF ENTRY 08/25/2005 | ENTRY # 990-0899774-6 | DESCRIPTION ELLIOTTI PINE FENCEBOARDS/FENCING |
|---|---|---|

| | | |
|---|---|---|
| CUSTOMS DUTY | | 28,175.47 |
| CUSTOMS ENTRY FEE | | 110.00 |

THE IMPORTER MUST FURNISH MISSING DOCUMENTS WITHIN THE PERIOD OF TIME REQUIRED BY CUSTOMS REGULATIONS TO AVOID CUSTOM PENALTIES

100948
B11044

OK E

| SUBTOTAL | 28,285.47 |
|---|---|
| INTEREST | 0.00 |
| LESS DEPOSIT | 0.00 |
| PLEASE PAY THIS AMOUNT | 28,285.47 |

REMARKS
CUSTOMS CLEARED IN GULFPORT, MS.

AIG00714

**IMPORTANT: SEE TERMS AND CONDITIONS OF SERVICE ON REVERSE SIDE.**

If you are the importer of record, payment to the broker will not relieve you of liability for Customs charges (duties,taxes or other debts owed Customs) in the event the charges are not paid by the broker. Therefore, if you pay by check, Customs charges may be paid with a separate check payable to the "U.S. Customs Service" which shall be delivered to Customs by the broker.

ORIGINAL INVOICE

SEP. 9, 2005  2:33PM

TABS: ▼    ▼

**RICHARD MURRAY & CO, INC.**
P.O. DRAWER 30
MOBILE, AL 36601
Phone: 251-432-5549   Fax: 251-432-2810

## INVOICE

RECEIVED
AUG 1 2005

SERVICES BILLED TO:

GREAT SOUTHERN WOOD PRESERVING I
P.O. BOX 610
ABBEVILLE, AL   36310

| CUST. NO. GRESOU | INVOICE NO. 3539-05 |
|---|---|
| INVOICE DATE 08/04/2005 | FILE NO. 3539-05 |
| DUE DATE 08/19/2005 | YOUR REFERENCE NO. |
| TERMS NET 15 DAYS | |

| AIRLINE/STEAMSHIP KESTREL ARROW 045 | | MASTER GBUL KEA045PGA32B | HOUSE |
|---|---|---|---|

| ARRIVAL DATE 08/05/2005 | DEPARTURE DATE 07/12/2005 | SHIPPER/CONSIGNEE GLOBAL FIBER | ORIGIN/DESTINATION PARANAGUA; ANTONINA, |
|---|---|---|---|
| PIECES 2,800 | WEIGHT KGS 1,238,198 | GREAT SOUTHERN WOOD PRESERVING I | GULFPORT, MS |

| DATE OF ENTRY 08/05/2005 | ENTRY # 990-0899520-3 | DESCRIPTION ELLIOTTI PINE FENCEBOARDS/FENCING |
|---|---|---|

| CUSTOMS DUTY | 1,083.87 |
|---|---|
| CUSTOMS ENTRY FEE | 110.00 |

THE IMPORTER MUST
FURNISH MISSING
DOCUMENTS WITHIN THE
PERIOD OF TIME
REQUIRED BY CUSTOMS
REGULATIONS TO AVOID
CUSTOM PENALTIES

*100823*
*B11034*
*dee*

VENDOR # H468 PC 8 CO 2
INVOICE # 3539-05
DATE 8-4-05
DUE DATE 8-19-05
GROSS AMOUNT 1193.87
AMOUNT
G.L. DISTRIBUTED

| SUBTOTAL | 1,193.87 |
|---|---|
| INTEREST | 0.00 |
| LESS DEPOSIT | 0.00 |
| PLEASE PAY THIS AMOUNT | 1,193.87 |

| REMARKS CUSTOMS CLEARED IN GULFPORT, MS. | * | *BS09 #256000* |
|---|---|---|

**IMPORTANT: SEE TERMS AND CONDITIONS OF SERVICE ON REVERSE SIDE.**

If you are the importer of record, payment to the broker will not relieve you of liability for Customs charges (duties, taxes or other debts owed Customs) in
the event the charges are not paid by the broker. Therefore, if you pay by check, Customs charges may be paid with a separate check payable to the
"U.S. Customs Service" which shall be delivered to Customs by the broker.

ORIGINAL INVOICE

**AIG01527**

**RICHARD MURRAY & CO, INC.**
P.O. DRAWER 30
MOBILE, AL 36601
Phone: 251-432-5549  Fax: 251-432-2810



# INVOICE

SERVICES BILLED TO:

GREAT SOUTHERN WOOD PRESERVING I
P.O. BOX 610
ABBEVILLE, AL  36310

| ACCT NO. GRESOU | INVOICE NO. 3540-05 |
|---|---|
| INVOICE DATE 08/04/2005 | FILE NO 3540-05 |
| DUE DATE 08/19/2005 | YOUR REFERENCE NO. |
| TERMS NET 15 DAYS | |

| AIRLINE/STEAMSHIP KESTREL ARROW 045 | MASTER GBUL KEA045PGA33B | HOUSE |
|---|---|---|

| ARRIVAL DATE 08/05/2005 | DEPARTURE DATE 07/12/2005 | SHIPPER/CONSIGNEE BRASILMAD | ORIGIN/DESTINATION PARANAGUA; ANTONINA, |
|---|---|---|---|
| PIECES 889 | WEIGHT KGS 380,962 | GREAT SOUTHERN WOOD PRESERVING I | GULFPORT, MS |

| DATE OF ENTRY 08/05/2005 | ENTRY # 990-0899519-5 | DESCRIPTION ELLIOTTI PINE FENCEBOARDS/FENCING |
|---|---|---|

| | | |
|---|---|---|
| CUSTOMS DUTY | 497.54 | THE IMPORTER MUST FURNISH MISSING DOCUMENTS WITHIN THE PERIOD OF TIME REQUIRED BY CUSTOMS REGULATIONS TO AVOID CUSTOM PENALTIES |
| CUSTOMS ENTRY FEE | 110.00 | |

100824
√3 11037

| SUBTOTAL | 607.54 |
|---|---|
| INTEREST | 0.00 |
| LESS DEPOSIT | 0.00 |
| PLEASE PAY THIS AMOUNT | 607.54 |

| REMARKS CUSTOMS CLEARED IN GULFPORT, MS. | * | B589 # 256000 |
|---|---|---|

**IMPORTANT: SEE TERMS AND CONDITIONS OF SERVICE ON REVERSE SIDE.**

If you are the importer of record, payment to the broker will not relieve you of liability for Customs charges (duties, taxes or other debts owed Customs) in the event the charges are not paid by the broker. Therefore, if you pay by check, Customs charges may be paid with a separate check payable to the "U.S. Customs Service" which shall be delivered to Customs by the broker.

ORIGINAL INVOICE

**AIG01557**

# Exhibit D



LUSK, LUSK,
DOWDY & CALDWELL, P.C.
ATTORNEYS AND COUNSELORS AT LAW

DONALD D. LUSK (1943-2006)
KENNETH A. DOWDY
PAYTON C. LUSK
LESLIE A. CALDWELL*
DAVID L. DEAN

July 21, 2006
via overnight delivery

2101 HIGHLAND AVENUE
SUITE 410
BIRMINGHAM, ALABAMA 35205
(205) 933-7090
FAX: (205) 933-7099

EMP. ID: 63-1171807

* also admitted to Georgia Bar

Ms. Selena Ho
AIG Marine Adjuster, Inc.
300 South Riverside Plaza, Suite 2100
Chicago, IL 60606-6613

RE:    Great Southern Wood Preserving, Inc. - Hurricane Katrina Losses
       Our File:                 7039-068
       Policy No.:               88590C
       Policy Inception Date:    06/02/05
       Claim Nos.:               0061343 (Sanko Stream v. 19)
                                 0061346 (Sanko Stream v. 19)
                                 0068147 (Penguin Arrow v. 53)
                                 0068148 (Kestrel Arrow v. 45)
       Date of Loss:             08/29/05

Dear Ms. Ho:

I was disappointed to receive your July 7, 2006 denying the above-referenced claims made by Great Southern Wood Preserving under the Marine Open Cargo Policy (No. 88590C) issued by American Home Assurance Company. I believe you have misinterpreted relevant portions of the subject policy to the detriment of Great Southern and you have introduced irrelevant information in an effort to justify your denial of the claim. The policy in question provides coverage for the lumber delivered by Sanko Stream v. 19 and Kestrel Arrow v. 45 and lost during Hurricane Katrina.

In your July 7 letter, you discuss information you believe relevant to the coverage inquiry, including allegations that "Great Southern used the warehouse at the pier as a storage facility;" that "it typically takes Great Southern 90 days or longer to remove the lumber delivered by a particular vessel completely from the Gulfport warehouse;" that "the bills of lading show that the place of delivery is the Port of Gulfport, and the space designated for 'Place of delivery by on carrier' is blank." Great Southern finds this information irrelevant to the coverage inquiry. However, since you believe this information supports your denial of coverage, I want to provide a response.

As to your first point, the amount lumber received on a vessel equates to generally 30-250 tractor-trailer loads. Logistically, it takes time to move this amount of lumber; therefore, a storage facility was leased to shelter the wood and move it from the pier.

**AIG00004**

94

Ms. Selena Ho
July 21, 2006
Page two

As to your second point, the lumber received on the three vessels in question had been in port less than 60 days at the time of the storm, and the majority of the lumber had been in port less than 30 days. The Sanko Stream v. 19 delivered 100 tractor-trailer loads of lumber four days before the storm and of those 100 loads none were able to be transported out of the port. The Kestrel Arrow v. 45 delivered 90 tractor-trailer loads of lumber 24 days before the storm, and at the time the storm made landfall, approximately 24 loads remained in the port. The Penguin Arrow v. 53 delivered 31 tractor-trailer loads of lumber on July 6, 2005 and at the time of the storm, 16.5 loads remained at the port. In total, there were approximately 164.5 tractor-trailer loads of lumber present in the warehouse at the time of landfall and of those 164.5 loads, 92% of those loads had been received less than 30 days before the storm made landfall. The lumber shipments noted in this letter were actively being transported from the port to their final destinations.

As to your third point, while the place of delivery and destination on the bill of lading was listed as "Gulfport," this is merely a ship reference to the domestic port, or ports, where the delivery will be made. The Sanko Stream v. 19 docked and unloaded at Port Manatee, Florida, Gulfport, Mississippi, and Lake Charles, Louisiana during its voyage. Therefore, the bill of lading for the lumber in question referenced only Gulfport along with the amount of lumber to be delivered.

As to your fourth point, the "Place of delivery by on carrier" portion of the bills of lading is blank because that information is unimportant to the sellers of the wood in question or the operators the ship carrying the wood in question. Their only inquiry would be the amount of lumber to be offloaded at a designated port.

Great Southern disagrees with your position that the losses in question occurred after the coverage ceased. I respectfully demand that you rescind your previous denial of these claims. Your immediate attention to this matter will be appreciated.

Sincerely,

Kenneth A. Dowdy
:ls

cc:    James W. Rane
       M. Greg Rane
       Sid Belcher, Esq.
       Dan Morton

**AIG00005**

# Exhibit E

Richard Murray & Co., Inc.

## ABI PROCESSING STATUS REPORT - 7501

Page: 1
MAC

10/05/2006
02:07:13 PM

| File No. | Entry No. | Status | | Employee | Date | Time |
|---|---|---|---|---|---|---|
| 3839-05 | 990-0809774-6 | LINK - 7501 Prepare Messages | Passed And Certified | DSEDEE | 08/25/2005 | 08:46:23 AM |
| | | ABI - 7501 ABI Results | Paperless - Filer Retain Records | DSEDEE | 08/25/2005 | 09:46:38 AM |
| | | | Passed - Cert-Release Certified Via Summary | DSEDEE | 08/25/2005 | 09:46:38 AM |
| | | ABI - Cargo Release Processing Results | Certified | DSEDEE | 08/25/2005 | 09:46:44 AM |
| | | | Entry Documents Required | DSEDEE | 08/25/2005 | 09:46:44 AM |
| | | | Manifest Hold Agriculture | DSEDEE | 08/25/2005 | 09:46:44 AM |
| | | | Entry Documents Required | DEEDMR | 08/25/2005 | 09:46:44 AM |
| | | | Manifest Hold Agriculture | DSEDEE | 08/26/2005 | 09:44:24 AM |
| | | | Conditional Release Specific Document Review | DSEDEE | 08/26/2005 | 09:44:24 AM |
| | | | Manifest Hold Agriculture | DSEDEE | 08/26/2005 | 11:48:40 AM |
| | | LINK - Stmt Date-Modify (Auto) | Passed - Filer Order Stmt/Pay: 09/14/2005 | DSFDEE | 08/26/2005 | 11:48:40 AM |
| | | ABI - Stmt Date-Modify | Accepted - Stmt/Pay: 09/14/2005 Stmt No: 1905251028 | JAN | 09/08/2005 | 02:29:48 PM |
| | | LINK - Stmt Date-Modify (Auto) | Passed - Filer Order Stmt/Pay: 09/26/2005 | DSEDEE | 05/08/2005 | 02:36:14 PM |
| | | | Passed - Filer Order Stmt/Pay: 09/26/2005 | JAN | 09/14/2005 | 10:32:27 AM |
| | | ABI - Stmt Date-Modify | Accepted - Stmt/Pay: 09/23/2005 Stmt No: 1905257009 | JAN | 09/14/2005 | 10:37:21 AM |
| | | LINK - 7501 Prepare Messages | Replace And Passed | DSEDEE | 09/14/2005 | 10:42:39 AM |
| | | | Replace And Passed | MAC | 09/19/2005 | 01:58:36 PM |
| | | ABI - 7501 ABI Results | Passed | DSEDEE | 09/19/2005 | 01:49:51 PM |
| | | | Paperless - Filer Retain Records | DSEDEE | 09/19/2005 | 02:38:38 PM |
| | | | Paperless - Filer Retain Records | DSEDEE | 09/19/2005 | 02:38:38 PM |
| | | | Passed | DSEDEE | 09/19/2005 | 02:31:40 PM |
| | | ABI - Cargo Release Processing Results | Conditional Release Specific Document Review | DSEDEE | 10/04/2005 | 10:52:25 AM |
| | | | Agriculture Manifest Hold Removed | DSEDEE | 10/04/2005 | 10:52:26 AM |
| | | | Release Date Update - 10/04/2005 | DSEDEE | 10/04/2005 | 10:52:26 AM |
| | | ABI - Liquidation | No Change | DSEDEE | 08/11/2006 | 08:29:04 AM |

GSWP 105

# Exhibit F

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| GREAT SOUTHERN WOOD PRESERVING, INC., | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil No. 1:06-cv-00708-CSC |
| AMERICAN HOME ASSURANCE CO., AIG, AMERICAN INTERNATIONAL UNDERWRITERS CORP., AMERICAN INTERNATIONAL MARINE AGENCY, | * * * * * | |
| Defendants. | * | |

## SECOND SELENA HO DECLARATION

STATE OF ILLINOIS     )
COUNTY OF COOK     )

1.    My name is Selena Ho. I am an Assistant Vice President and Regional Claims Manager with AI Marine Adjusters, Inc., an adjusting entity for the AIG group of companies ("AIG"). I have personal knowledge of the matters stated herein.

2.    I am making this second declaration in support of Defendants' motion for summary judgment in the above-styled case.

3.    At no time during the claims investigation did Great Southern assert that the goods shipped on the M/V Sanko Stream v. 19 remained in transit because of any USDA hold.

4.    As part of its investigation of the claim, American Home Assurance Co. made repeated requests for documentation concerning the loss. Although Great Southern produced a number of documents, many concerning shipments which were not covered under the policy, Great Southern did not produce or identify any documents concerning any USDA hold on lumber shipped aboard the M/V Sanko Stream v. 19.

5.      Following receipt of notice of the claim, American Home Assurance Co. retained SGS North American/Marine Services ("SGS"), an independent marine surveyor, to investigate the claim.

6.      As part of its investigation, SGS contacted Great Southern and requested documentation concerning the loss.

7.      By email dated September 9, 2005, SGS wrote to Great Southern's lawyer and requested documentation concerning the claim including dock receipts of discharge, warehouse receipts and other documents indicating when Great Southern received the goods into its warehouse. SGS surveyor Michael Iversen's email dated September 9, 2005 is attached hereto as Exhibit 1.

8.      By email dated September 29, 2005, SGS reported to me that it was having difficulty contacting Great Southern and that Great Southern had not returned telephone calls. Michael Iversen's September, 29, 2005 email is attached hereto as Exhibit 2.

9.      On October 7, 2005, Great Southern's lawyers conducted a telephone conference with SGS surveyor Fred Clausen concerning the claim.

10.      By letter dated October 7, 2005, Great Southern's lawyer, Donald Lusk, wrote to SGS surveyor Fred Clausen concerning the document requests. Mr. Lusk's October 7, 2005 is attached hereto as Exhibit 3.

11.      SGS surveyor Fred Clausen reported to me concerning his conference with Great Southern's lawyers by letter dated October 7, 2005. Mr. Clausen's October 7, 2005 letter is attached hereto as Exhibit 4.

12.      I forwarded Mr. Clausen's letter to Susan Farrell with Great Southern's insurance broker who was handling the claim for Great Southern. I hand wrote a memo to Ms. Farrell on the copy of Mr. Clausen's letter. A copy of the forwarded letter with my hand-written memo is attached hereto as Exhibit 5.

13.      By letter dated November 2, 2005, the SGS surveyor Roger Iversen reported to me on the status of the investigation and the need for documents from Great Southern. Mr. Iversen's November 2, 2005 letter is attached hereto as Exhibit 6.

14.      I wrote to Great Southern's insurance broker on November 2, 2005, noted that lack of production of documents to date and requested that Great Southern produce the documents. My November 2, 2005 letter is attached hereto as Exhibit 7.

15.     By letter dated December 22, 2005, Great Southern's lawyer wrote to SGS surveyor Fred Clausen concerning the request for documents. Mr. Lusk's December 22, 2005 letter is attached hereto as Exhibit 8.

16.     By letter dated February 1, 2006, Great Southern's lawyer wrote to Mr. Clausen and requested a status report on the claim and requested finalization of the claim by February 26, 2006. Mr. Lusk's's February 1, 2006 letter is attached hereto as Exhibit 9.

17.     By letter dated February 7, 2006, SGS surveyor Roger Iversen wrote to Great Southern's lawyer again requesting documents concerning the claim. Mr. Iversen's February 7, 2006 letter is attached hereto as Exhibit 10.

18.     On February 15, 2006, I again wrote to Great Southern's insurance broker and requested the Great Southern documents. My February 15, 2005 email is attached hereto as Exhibit 11.

19.     On March 30, 2006, Great Southern's lawyer, Kenneth Dowdy, wrote to Mr. Clausen. Mr. Dowdy's letter states: "The arrival dates at the port of discharge are contained on the [customs agent] Richard Murray & Co., Inc. invoice under date of entry." Mr. Dowdy's March 30, 2006 letter is attached hereto as Exhibit 12.

20.     On May 1, 2006, Great Southern's insurance broker Dan Morton wrote to me stating that Great Southern had produced the documents it had and that the documents from Great Southern's customs broker Richard Murray & Co. "are date stamped with arrivals and customs clearances." Mr. Morton's May 1, 2006 email is attached hereto as Exhibit 13.

21.     On June 26, 2006 I wrote to Great Southern's insurance broker concerning the claim and noted that it appeared that we had not received complete documentation on the claim.

22.     On June 26, 2006, Great Southern's insurance broker forwarded me a message from Great Southern's in-house lawyer, Sid Belcher. Mr. Belcher stated: "They have all of the information we have; we have sent it to them twice now. Any further delays will result in a lawsuit." My email and Mr. Belcher's response, both dated June 26, 2006, are attached hereto as Exhibit 14.

23.     American Home Assurance Co. subsequently denied Great Southern's claim by letter dated July 6, 2006.

I declare under penalty of perjury under the laws of the United States of America that to the best of my knowledge the foregoing is true and correct.

Executed on this 17th day of July, 2006.

SELENA HO

# Exhibit 1

Exhibit 1

**Farrell, Susan**

| | |
|---|---|
| **From:** | Sidney Belcher [sbelcher@gswp.net] |
| **Sent:** | Friday, September 09, 2005 12:04 PM |
| **To:** | Morton, Daniel; Farrell, Susan; DeHart, Georgia |
| **Cc:** | William Ray; Marty Goff |
| **Subject:** | FW: Insured: Great Southern Wood |

**From:** Iversen, Michael (Springfield) [mailto:Michael.Iversen@sgs.com]
**Sent:** Friday, September 09, 2005 11:38 AM
**To:** Sidney Belcher
**Cc:** selena.ho@aig.com
**Subject:** Insured: Great Southern Wood

September 9, 2005

Via Email Only
sbelcher@gswp.net
cc:   selena.ho@aig.com

Re:   Insured: Great Southern Wood
      Import Ocean Shipment
      Seven Different Vessels 13 Ocean Bills of Lading
      Bundles of Lumber
      Campana/Gulf Port, MS
      Our First File No.: 395121
      First A.I. Marine Reference: 0061346

Dear Mr. Belcher:

This correspondence will further document our previous correspondence/telephone conversation today's date, with respect to the subject shipment and damages reported.

Per our telephone conversation, we advised your office that SGS has been appointed to be the Surveyors with respect to the subject matter. We have currently opened files per vessel, with respect to lumber still in Gulf Port, MS.

We have reviewed the file and have been in receipt of the ocean bills of lading. However, we have not been provided with documentation advising when the vessels discharged at the port of entry.

We ask that their discharging dates be submitted per bill of lading, at your earliest convenience, of which we will submit to underwriters for their review.

Thank you in advance for your time and cooperation, should you have any questions or comments, please do not hesitate to contact the undersigned.

GSWP   476

Respectfully Yours,

Michael Iversen
10/3/2005

Page 2 of 2

Marine Surveyor
SGS
1801 West Norton Road, Ste. 309
Springfield MO. 65803
Phone: 417-863-8434
Fax: 417-863-0925

This email is submitted by SGS, Inc. without prejudice to the rights and/or liabilities of any and all parties concerned and is based only the facts presently known.

The right to amend or supplement this email is reserved should additional information be made available.

_____

The information in this email and any attachments is confidential and intended solely for the use of the individual(s) to whom it is addressed or otherwise directed. Please note that any views or opinions presented in this email are solely those of the author and do not necessarily represent those of the Company. Finally, the recipient should check this email and any attachments for the presence of viruses. The Company accepts no liability for any damage caused by any virus transmitted by this email.

All SGS services are rendered in accordance with the applicable SGS conditions of service available on request and accessible at http://www.sgs.com/terms_and_conditions.htm

GSWP   477

10/3/2005

Exhibit 2

Exhibit 2

**Ho, Selena**

| | |
|---|---|
| **From:** | Iversen, Michael (Springfield) [Michael.Iversen@sgs.com] |
| **Sent:** | Thursday, September 29, 2005 9:29 AM |
| **To:** | Ho, Selena |
| **Subject:** | Great Southern wood, your files 0061346 & 0061343 |

Dear Selena, per our telephone conversation, our Rep in NOLA, Mr Fred Clausen (985-781-1000 or cell 985-640-2747) has left messages for the insured to discuss the loss and make arrangements to gain access to the location of the product. However as of today the insured has yet to return his call. We ask if you can assist us with the insured to have one of there representatives call Mr. Clausen so we can make arrangements for inspection.

Respectfully Yours,

Michael Iversen
Marine Surveyor
SGS
1801 West Norton Road, Ste. 309
Springfield MO. 65803
Phone: 417-863-8434
Fax: 417-863-0925

This email is submitted by SGS, Inc. without prejudice to the rights and/or liabilities of any and all parties concerned and is based only the facts presently known.

The right to amend or supplement this email is reserved should additional information be made available.

The information in this email and any attachments is confidential and intended solely for the use of the individual(s) to whom it is addressed or otherwise directed. Please note that any views or opinions presented in this email are solely those of the author and do not necessarily represent those of the Company. Finally, the recipient should check this email and any attachments for the presence of viruses. The Company accepts no liability for any damage caused by any virus transmitted by this email.

All SGS services are rendered in accordance with the applicable SGS conditions of service available on request and accessible at http://www.sgs.com/terms_and_conditions.htm

9/29/2005

**AIG00871**

# Exhibit 3

Exhibit 3



**LUSK, LUSK,
DOWDY & CALDWELL, I**
ATTORNEYS AND COUNSELLORS AT LAW

DONALD D. LUSK
KENNETH A. DOWDY
PATTON C. LUSK
LESLIE A. CALDWELL*

*also admitted in Georgia Bar

_____ AVENUE
SUITE 610
BIRMINGHAM, ALABAMA 35206
(205) 933-7090
FAX: (205) 933-7099

EMP. ID: 63-1171807

October 7, 2005
Via Facsimile  985-781-1022

Mr. Fred Clausen
SGS-North American/Marine Services
1423 Fremaux Ave.
Slidell, LA 70458

0061346

(A)

Re:    Great Southern Wood Preserving, Inc.

Dear Mr. Clausen:

In keeping with information and instructions from Ms. Selena Ho of AIG, received during a conference call to her on the afternoon of September 29, 2005, Mr. Sid Belcher of Great Southern contacted you and scheduled a conference call which we had at approximately 8:30 a.m. on the morning of Tuesday, October 4, 2005.

During the conference call with Ms. Ho, she was asked what activity, if any, she needed Great Southern to undertake and if there was information she needed from Great Southern to identify it.

Ms. Ho told us that she had retained the services of your company and that through your services she was attempting to determine "when each shipment went into the warehouse?" She requested what she described as copies of "warehouse receipts", if any exist.

Ms. Ho also requested that representatives of Great Southern be in communication with you and provide you responses to your questions and inquiries. She advised that you will be in communication with her and provide her whatever information she needs and the fruits of your activity.

In accordance with the advices and instructions of Ms. Ho, Mr. Sid Belcher and I spoke to you at approximately 8:30 a.m. on October 4, 2005. I identified myself as an attorney and advised you that I had been asked by Great Southern to represent Great

**AIG00842**

Mr. Clausen
October 7, 2005
Page 2 of 5

conversation with you was to comply with the request and instructions of Ms. Ho, that
Great Southern be in communication with you.

I appreciate your providing me at my request with the identity of your company,
your business address and telephone numbers. I confirm your statement that you are the
representative of SGS-North America/Marine Services with whom Great Southern is to
communicate.

I advised you that Mr. Sid Belcher and I will be the persons through whom you
should communicate with Great Southern and instructed that any written communications
be addressed to both me and Mr. Belcher at the following addresses:

1.    Donald D. Lusk, Esquire
      Lusk, Lusk, Dowdy & Caldwell, P. C.
      2101 Highland Avenue
      Suite 410
      Birmingham, Alabama 35205

2.    Sidney Belcher, Esquire
      Great Southern Wood Preserving, Inc.
      U. S. Highway 431 North
      P. O. Box 610
      Abbeville, Alabama 36310

After our introductions and our agreement upon how, and through whom, our
future communications will take place, I requested that you inform me as to what Great
Southern could do to help you in your proceeding with, and concluding of, your
assignments from Ms. Ho and AIG. You told me that you had received information
delivered by Great Southern to Ms. Ho. I understood you to say that those materials
include the packing lists, the bills of lading, and the customs documents. I asked if you
wished to schedule a meeting of any kind with any of the representatives of Great
Southern to facilitate your work. You stated that you see no need for the scheduling of
any meetings.

I asked what you need for Great Southern to do, not do, or to provide to you. You
told me that Great Southern should do the following:

1.    Make sure that a formal notice of the loss is given to each of the
      ship lines involved. You informed me that the ship lines are
      "entitled to inspect the property, and participate in the loss
      evaluation, if they choose to do so." You stated that your company
      is involved in numerous similar matters and that every ship line,
      with whom you are familiar, is waiving any interest in salvage and
      any rights to inspect and/or participate. Upon your instruction, Mr.

**AIG00843**

Mr. Clausen
October 7, 2005
Page 3 of 5

Belcher will make certain that formal written notice has been, or is given, to each of the ship lines involved. Mr. Belcher may be in communication with you to make certain that his activities in that regard are satisfactory to you. Any help that you can give him in that matter will be greatly appreciated.

2.     Provide you copies of "dock receipts of discharge", if any exist, showing the "discharge of the goods at the port." Mr. Belcher and I informed you that it is our understanding that these documents have been provided to you within the information already provided by Great Southern to Ms. Ho. You indicated that the main purpose of your activity is to "determine that the goods existed, and where they were located on the date and time of the accident, and where they are located, if it is possible to know, at the present time." I commented to you that it is my understanding that the building in which the property was located at the time of the accident, was completely destroyed and that the property was as far inland as one and a half miles and some portions traveled even further. You told me that you had already taken activities through your company's representatives to determine such information and that you are virtually satisfied that the property is irretrievable and lost forever, with little or no possibility of a salvage value. I asked if you wished for us to help you locate the present whereabouts of any of the damaged property and you told me that there was no need for such assistance in light of the previous information on those issues you had obtained, unilaterally, through the services of your company.

I inquired of you about what information would be contained in the "dock receipts of discharge," which would relate to your activities. You told me that such "dock receipts of discharge" documents, would provide you with "notice of arrival, date of arrival, date and time of discharge and to whom the goods were discharged".

Mr. Belcher and I inform you that to the best of our present knowledge, no "warehouse receipts" as requested by Ms. Ho, exist and that to the best of our present knowledge the information you are trying to obtain is contained within the customs documents, pertaining to the shipments and the property, already within the materials you have obtained from Ms. Ho. If not, it is our information that she has that documentation and can promptly provide it to you. If you need a duplication of that activity by Great Southern, Mr. Belcher and I will be happy to undertake that responsibility.

AIG00844

10/12/2005 09:47  4178630925                SGS                        PAGE 04/04
10/01/2005 14:10 FAX                                                           @005

Mr. Clausen
October 7, 2005
Page 4 of 5

3.  Provide you with the location and address of the warehouse in which the property was located. I advise you that I will follow to obtain that information and will provide it to you.

We concluded our conversation with my advising you that I would promptly attempt to get up to speed in regards to the matters we discussed and that, in the meantime, I would write you this letter and send a copy to Ms. Selena Ho for her information.

I also advised you that Mr. Sid Belcher and I will attempt to determine if Great Southern has "dock receipts of discharge" documents in keeping with your request for same and/or any "warehouse receipts" as requested by Ms. Ho, and, if so, try to get them to you as promptly as reasonably possible.

We agreed that Mr. Belcher and I will be back in touch with you in approximately ten days to advise you of our progress. We will appreciate you, at that time, being prepared to similarly provide us with the fruits of your activities toward locating such documentation.

In the meantime, if Great Southern can be of any further, other or additional assistance to you and/or to Ms. Ho, please contact Mr. Belcher and me. We will reasonably and promptly respond to any reasonable request.

You will note that I am providing a copy of this letter to Ms. Ho for her information and a copy as well to Mr. Belcher for that same purpose.

Sincerely,

LUSK, LUSK, DOWDY & CALDWELL, P.C.

Donald D. Lusk

DDL;ls
cc:
Ms. Selena Ho
Marine Associates of Illinois, Inc.
300 South Riverside Plaza
Chicago, IL 60601

Sid Belcher

**AIG00845**

# Exhibit 4

Exhibit 4



October 7, 2005


A.I. Marine Associates of Illinois, Inc.
300 S. Riverside Plaza, Suite 2100
Chicago, IL  60606-6613

Attn:   Ms. Selena Ho

RE:     Great Southern Wood
        Your Reference: 0061343 & 0061346
        Our Reference:  404947, 395126, 395121 & 395122

Dear Selena:

We refer to the above two files relating to damaged shipments due to Hurricane Katrina
in the Gulfport, Mississippi, area.

We have made numerous contacts with Great Southern Wood Company and we were
finally informed that they would arrange a joint telephone conference call with their
attorney, Mr. Don Lusk, was available.

On October 4, 2005 Mr. Don Lusk, the attorney representing Great Southern Wood, and
Mr. Sid Belcher, from Great Southern Wood, called our office for a conference call.

Mr. Lusk initiated the conversation by indicating that he is the attorney of record for
Great Southern Wood.  Mr. Lusk then requested guidance on how to proceed with this
cargo claim.  We acting as surveyors advised Mr. Lusk that documentation pertaining to
the voyage history, as well as discharge information on dock receipts and arrival notices
and any other documentation pertaining to the location of the shipments at the time of the
hurricane impact would be required.

Mr. Lusk was very conservative about submitting information pertaining to the actual
discharge date.  We informed Mr. Lusk that this information is important in order to
establish the location of the goods as much as all of the goods that were left on the dock
when Hurricane Katrina hit the area.  After numerous discussions Mr. Lusk advised that
he will be forwarding correspondence to SGS in Slidell, Louisiana, indicating that he is
council of record for Great Southern Wood requesting that he be copied in on any
correspondence regarding these files.  At this point we advised Mr. Lusk that we would
await his advices and at this time Mr. Lusk informed us that due to his busy schedule that
this correspondence might be delayed.  I reiterated to Mr. Lusk and Mr. Belcher that

AIG00516

Files: 404947, 395126, 395121 & 395122
October 7, 2005
Page 2


before any investigation and inspection can be made we will need the documentation indicating the discharge of the vessels at Gulfport, Mississippi.

As soon as we obtain this information we will advise you accordingly.

All actions in this matter are without prejudice, and for the account of whom it may concern.

Sincerely,



Roger Iversen
Vice President Marine

AIG00517

# Exhibit 5

Exhibit 5

# SGS

October 7, 2005

A.I. MARINE ASSOC.

OCT 17 2005

**RECEIVED**

A.I. Marine Associates of Illinois, Inc.
300 S. Riverside Plaza, Suite 2100
Chicago, IL. 60606-6613

847-413-9445

Attn: Ms. Selena Ho

RE:   Great Southern Wood
      Your Reference: 0061343 & 0061346
      Our Reference: 404947, 395126, 395121 & 395122

Dear Selena:

We refer to the above two files relating to damaged shipments due to Hurricane Katrina in the Gulfport, Mississippi, area.

We have made numerous contacts with Great Southern Wood Company and we were finally informed that they would arrange a joint telephone conference call with their attorney, Mr. Don Lusk, was available.

On October 4, 2005 Mr. Don Lusk, the attorney representing Great Southern Wood, and Mr. Sid Belcher, from Great Southern Wood, called our office for a conference call.

Mr. Lusk initiated the conversation by indicating that he is the attorney of record for Great Southern Wood. Mr. Lusk then requested guidance on how to proceed with this cargo claim. We acting as surveyors advised Mr. Lusk that documentation pertaining to the voyage history, as well as discharge information on dock receipts and arrival notices and any other documentation pertaining to the location of the shipments at the time of the hurricane impact would be required.

Mr. Lusk was very conservative about submitting information pertaining to the actual discharge date. We informed Mr. Lusk that this information is important in order to establish the location of the goods as much as all of the goods that were left on the dock when Hurricane Katrina hit the area. After numerous discussions Mr. Lusk advised that he will be forwarding correspondence to SGS in Slidell, Louisiana, indicating that he is council of record for Great Southern Wood requesting that he be copied in on any correspondence regarding these files. At this point we advised Mr. Lusk that we would await his advices and at this time Mr. Lusk informed us that due to his busy schedule that this correspondence might be delayed. I reiterated to Mr. Lusk and Mr. Belcher that

SGS North America Inc. | Marine Services  1801 W. Norton Road, Suite 309, Springfield, MO 65803   (417) 863-8434 national office  f (417) 863-0925  www.sgs.com

Member of the SGS Group

**AIG00869**

Files: 404947, 395126, 395121 & 395122
October 7, 2005
Page 2

before any investigation and inspection can be made we will need the documentation indicating the discharge of the vessels at Gulfport, Mississippi.

As soon as we obtain this information we will advise you accordingly.

All actions in this matter are without prejudice, and for the account of whom it may concern.

Sincerely,

Roger Iversen
Vice President Marine

TO: Susan Farrell
FROM: Selena Ho

#1 – Please help to convince the Insured & their attorney that we need to have records of when the various lumber shipments arrived at the warehouse.
We can only inspect verified shipments. Thank you!

AIG00870

# Exhibit 6

Exhibit 6



November 2, 2005

A.I. Marine Associates of Illinois, Inc.
300 S. Riverside Plaza, Suite 2100
Chicago, IL 60606-6613

Attn:    Ms. Selena Ho

RE:    Insured: Great Southern Wood
       Your Reference: 0061343 & 0061346
       Our Reference: 404947, 395126

Dear Selena:

We refer to our October 7, 2005 relating to damages sustained by Great Southern Wood due to Hurricane Katrina in the Gulf Port, Mississippi, area.

According to the letter sent to us by Great Southern Wood Preserving, Inc.'s attorney, Lusk, Lusk, Dowdy & Caldwell, PC, they were suppose to obtain the information we requested and send it to our office in New Orleans.

As of this date we have not received the information requested.

As per the letter sent to us on October 7, 2005 by the attorney they have asked that we do not communicate with the insured as all communications should be through their office.

This is highly unusual on a marine claim and unfortunately our file has been inactive since his letter of October 7, 2005.

If I can be of any further help, please do not hesitate to contact the undersigned at your earliest conveniences.

All actions in this matter are without prejudice, and for the account of whom it may concern.

Sincerely,


Roger Iversen
Vice President Marine

RI/pm


SGS North America Inc.    Marine Services  598 N. Spring Park Blvd., Mt. Vernon, MO  65712  t (417) 461-7090 f (417) 461-7095  www.sgs.com

Member of the SGS Group (Société Générale de Surveillance)

AIG00868

# Exhibit 7

Exhibit 7

-----Original Message-----
**From:** Ho, Selena
**Sent:** Wednesday, November 02, 2005 11:21 AM
**To:** 'Susan Farrell'
**Cc:** 'Roger Iversen'
**Subject:** FW: Great Southern Wood File # 0061343 & 0061346 & 0061214
**Importance:** High

Dear Susan, please note our surveyor's update that he has not heard from the Insured nor their attorney on requested documents. It's been two months since we received the notices of loss

As we discussed numerous times, we need the Insured's warehouse records/receipts to show when each shipment went in to the warehouse and the quantity of lumber that were stored. These documents are important to verify whether what they claimed were actually under our policy period as well as under the coverage period.

Susan, please help us by contacting the Insured to advise them that if we do not receive the requested documents within the next 60 days, we will consider closing our files due to non-activity. We also do not want to correspond through the Insured's attorney for we are not comfortable with his style and behavior. These are not litigated matters. Therefore, our surveyor will go through your office from now on for any requests and additional information, with copies to our office for our files.

Thank you!

## *Selena*

**IMPORTANT NOTICE:** *The information in this e-mail (and any attachments hereto) is confidential. If you are not the intended recipient, you must not use or disseminate the information. If you have received this e-mail in error, please immediately notify me by "Reply" command and permanently delete the original and any copies or printouts thereof. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by American International Group, Inc. or its subsidiaries or affiliates either jointly or severally, for any loss or damage arising in any way from its use.*

-----Original Message-----
**From:** Iversen, Roger (Springfield) [mailto:Roger.Iversen@sgs.com]
**Sent:** Wednesday, November 02, 2005 10:08 AM
**To:** Ho, Selena
**Subject:** Great Southern Wood File # 0061343 & 0061346

Hi Selena:

See attached for your review.

Best Regards

Roger

**AIG01172**

# Exhibit 8

Exhibit 8

# LUSK, LUSK, DOWDY & CALDWELL, P.C.
## ATTORNEYS AND COUNSELORS AT LAW

DONALD D. LUSK
KENNETH A. DOWDY
PAYTON C. LUSK
LESLIE A. CALDWELL*

*also admitted to Georgia Bar*

December 22, 2005
Via Facsimile  985-781-1022

2101 HIGHLAND AVENUE
SUITE 410
BIRMINGHAM, ALABAMA 35205
(205) 933-7090
FAX: (205) 933-7099

EMP. ID: 63-1171807

Mr. Fred Clausen
SGS-North American/Marine Services
1423 Fremaux Ave.
Slidell, LA 70458

Re:    Great Southern Wood Preserving, Inc.
       Our File: 7039-068

Dear Mr. Clausen:

This letter follows up my earlier letter to you of October 7, 2005. I had anticipated sending this letter sooner but was unavoidably delayed.

As per your instruction, as confirmed in my earlier letter to you of October 7, 2005, Great Southern Wood Preserving, Inc. did provide formal notice of loss to the ship lines involved. In that regard, I attach for your ready reference a copy of the October 12, 2005 letter of notice sent on behalf of Great Southern Wood Preserving, Inc. to Gearbulk, the ships' operator.

I am informed that the damaged goods were housed at the time of the incident made the basis of the claim at the Port of Gulf Port, West Pier, Gulfport, MS 39501. The building was owned and operated by the Mississippi State Port Authority, P. O. Box 40, One Hancock Plaza, Suite 1401, Gulfport, MS 39502. It is my information that entity has no documents described as "Warehouse Receipts", but you may feel free to contact them to determine if such documents ever existed and if so, do they presently exist or were they destroyed in the storm. If you obtain any documents from them, please provide me a copy.

Great Southern Wood Preserving, Inc.'s responses to the inquiries of you and of Ms. Ho, as set forth in my letter to you of October 7, 2005, are as follows:

1.      Great Southern Wood Preserving, Inc. knows of no "Warehouse Receipts" as requested by Ms. Ho.

2.      The information you and Ms. Ho are seeking to confirm, namely, that the lumber existed, where the lumber was located at the date and time of the loss, and the location of the warehouse is all contained within the documentation

**AIG01458**

Mr. Clausen
December 22, 2005
Page 2

already produced either to Ms. Ho and/or to you or contained with this letter and its attachments. In particular, you will find Warehouse Inventory Records received from the Gulfport Port Authority. To our knowledge, these records show the inventory and the amount of lumber located at the Port of Gulfport at the time of Hurricane Katrina.

3.      Great Southern Wood Preserving, Inc. can upon request provide you with a Delivery Breakdown Report showing the number of lumber units picked up at the Mississippi Port Authority warehouse, and describing to what vessel and voyage the particular lumber belongs. If you wish such a report, I will need for you to provide to me the dates upon which the report should begin and end for your purposes.

You will note that I am providing a copy of this letter to Ms. Ho as previously agreed. I was recently informed that you have asked that our communications to you go to and through Ms. Ho. I will be happy to follow your instructions and/or Ms. Ho concerning with whom Great Southern Wood Preserving, Inc. is to communicate relative to this matter. By copy of this letter to Ms. Ho, I am asking her to advise me if I am to communicate directly with her and no longer with you. Also, by copy of this letter to Ms. Ho, I am asking that if her company's procedures require the filing of a formal proof of loss by Great Southern Wood Preserving, Inc. that she proceed to transmit to me several of her company's proof of loss forms.

I believe your individual activities and investigation, as supplemented by the information provided to Ms. Ho and to you by the representatives of Great Southern Wood Preserving, Inc. will now place Ms. Ho in a position to immediately pay Great Southern Wood Preserving, Inc.'s claim. Great Southern Wood Preserving, Inc. believes its loss is valued at $1,543,867.75. I attach a spreadsheet entitled Marine Cargo Claim showing the amount of inventory, and related loss, at the Port of Gulfport on the storm's date of landfall. Great Southern Wood Preserving, Inc. would like to have this claim finalized by the end of January 2006 if not before. We appreciate your work on this matter.

Sincerely,

LUSK, LUSK, DOWDY & CALDWELL, P.C.

Donald D. Lusk

DDL;ls


Attachment

Mr. Clausen
December 22, 2005
Page 3


cc:
Ms. Selena Ho
Marine Associates of Illinois, Inc.
300 South Riverside Plaza
Chicago, IL  60601

Mr. Daniel G. Morton
Vice President
HRH
425 N. Martingale Road
Suite 1100
Schaumburg, IL  60173

**AIG01460**

# Exhibit 9

Exhibit 9



# LUSK, LUSK,
## DOWDY & CALDWELL, P.C.
### ATTORNEYS AND COUNSELORS AT LAW

DONALD D. LUSK
KENNETH A. DOWDY
PAYTON C. LUSK
LESLIE A. CALDWELL*

* also admitted to Georgia Bar

2101 HIGHLAND AVENUE
SUITE 410
BIRMINGHAM, ALABAMA 35205
(205) 933-7090
FAX: (205) 933-7099

EMP. ID: 63-1171807

February 1, 2006

Mr. Fred Clausen
SGS-North American/Marine Services
1423 Fremaux Ave.
Slidell, LA 70458

RE:    Great Southern Wood Preserving, Inc. - Hurricane Katrina Losses
       Our File:  7039-068

Dear Mr. Clausen:

This letter follows my earlier letter of December 22, 2005 where Great Southern Wood Preserving, Inc. provided you and Ms. Selena Ho with Warehouse Inventory Records received from the Gulfport Port Authority and the address to the warehouse in which the lumber in question was stored on the storm's date of landfall. Great Southern Wood Preserving, Inc. also provided you with a spreadsheet indicating the amount of lumber lost at the facility and the respective costs or expenses associated with that lumber.

In our previous letter, we asked Ms. Ho to communicate with us if her company's procedures require the filing of a formal proof of loss by Great Southern Wood Preserving, Inc. and if so, to transmit several of her company's proof of loss forms to me. Because we have not heard from Ms. Ho or you, we assume both of you have all of the required information to pay Great Southern Wood Preserving, Inc.'s claim. In our December 22, 2005 letter, we asked to have the claim finalized by the end of January 2006, if not before, and that date passed without any communication regarding the status of the claim. Therefore, I ask that you provide me and Mr. Sid Belcher with a status report on the claim and work to have the claim finalized by February 28, 2006. Thank you for your continued work on this claim.

Sincerely,

Donald D. Lusk

DDL;ls

AIG00512

# Exhibit 10

Exhibit 10

# SGS

February 7, 2006

Lusk, Lusk, Dowdy & Caldwell, P.C.
2101 Highland Ave., Ste. 410
Birmingham, AL 35205

A.I. MARINE ASSOC.
FEB 1  2006
RECEIVED

Attn:   Mr. Donald D. Lusk

RE:    Great Southern Wood Preserving, Inc.
       Our File Nos. 404947, 395126, 395121, & 395122
       Hurricane Katrina Losses
       Your File No.: 7039-068

Dear Mr. Lusk:

We refer to your letter of February 1, 2006 with respect to the captioned shipment.

As of this date we still have not received all the requested information in order for us to resolve this matter and submit our report to underwriters for their further consideration.

As previously requested, would you kindly obtain the vessels' arrival date at the port of discharge together with the ocean bills of lading covering these movements into the United States. As soon as we obtain this information we will then be in a position to finalize this matter and submit our report to underwriters for their further consideration.

All actions in this matter are without prejudice, and for the account of whom it may concern.

Sincerely,

Roger Iversen
Vice President Marine

RI/pm

**AIG01490**

# Exhibit 11

Exhibit 11

**Ho, Selena**

| | |
|---|---|
| **From:** | Ho, Selena |
| **Sent:** | Wednesday, February 15, 2006 12:02 PM |
| **To:** | 'Susan Farrell' |
| **Subject:** | FW: Great Southern Wood- Hurricane Katrina loss - 0061343 and 0061346 |
| **Importance:** | High |

Hello, Susan!

We have not seen the fax regarding Donald Lusk's letter yet.

To date, we and the surveyor have yet to receive the warehouse receipts/records on their lumber shipments that went in to the affected warehouse before the hurricane hit. Roger Iversen at SGS Marine wrote to Mr. Lusk again on 2/7/06 again asking for the requested documentation. Susan, in order for us to adjust these 2 losses, we have to have proofs that the shipments that they claimed did enter the warehouse within the coverage period, the lumber counts that went in to the warehouse before the hurricane hit, etc.

As for shipments that did not belong to our policy period, please confirm that Insured is withdrawing those preliminary claims.

We will wait to hear from you again.

Thank you!


*Selena*

**IMPORTANT NOTICE:** *The information in this e-mail (and any attachments hereto) is confidential. If you are not the intended recipient, you must not use or disseminate the information. If you have received this e-mail in error, please immediately notify me by "Reply" command and permanently delete the original and any copies or printouts thereof. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by American International Group, Inc. or its subsidiaries or affiliates either jointly or severally, for any loss or damage arising in any way from its use.*


-----Original Message-----
**From:** Ho, Selena
**Sent:** Tuesday, February 07, 2006 9:55 AM
**To:** 'Farrell, Susan'
**Subject:** RE: Great Southern Wood- Hurricane Katrina loss

Susan, we have no letter from Donald Lusk. Please fax us the letter for our review.

Thank you!


*Selena*

Fax: 312-930-5388
Internet: Selena.Ho@aig.com


2/15/2006

# Exhibit 12

Exhibit 12



## LUSK, LUSK, DOWDY & CALDWELL, P.C.
### ATTORNEYS AND COUNSELORS AT LAW

DONALD D. LUSK
KENNETH A. DOWDY
PAYTON C. LUSK
LESLIE A. CALDWELL*

*also admitted to Georgia Bar

March 30, 2006
(Via Federal Express)

2101 HIGHLAND AVENUE
SUITE 410
BIRMINGHAM, ALABAMA 35205
(205) 933-7090
FAX: (205) 933-7099

EMP. ID: 63-1171807

Mr. Fred Clausen
SGS-North American/Marine Services
1423 Fremaux Ave.
Slidell, LA 70458

Re:    Great Southern Wood Preserving, Inc.
       Our File: 7039-068

Dear Mr. Clausen:

This letter follows Don Lusk's letter of February 1, 2006 and is in response to your letter of February 7, 2006. I apologize for the delay in responding to your letter. However, Don Lusk unexpectedly passed away on February 24, 2006. I will be responsible for this matter on behalf of Great Southern.

As was previously provided to Great Southern's ocean cargo carrier, American Home Assurance Company, you should have complete copies of the ocean bills of lading for each shipment; however, to make sure you have all of the documentation, I am enclosing all such documents with this letter, as well as a copy of the Import Stock Report, which was created on November 10, 2005. The arrival dates at the port of discharge are contained on the Richard Murray & Co., Inc. invoice under date of entry. Again, this was previously provided to American Home but has been enclosed to ensure your receipt.

Moreover, as was explained in Don Lusk's December 22, 2005 letter, Great Southern can upon request provide you with Delivery Breakdown Reports showing the number of orders picked up at the Mississippi Port Authority warehouse, the date in which the delivery was shipped, the amount of lumber shipped, and the vessel from which the lumber originated. However, as we previously requested, you were to provide us with beginning and ending dates for your purposes. In order to expedite matters, I enclose records from March 2005 through August 2005.

Finally, since we have not received any proof of loss forms as requested in our two previous letters, it is our understanding that no proof of loss form is required for payment of the claim. Because we have again provided the necessary documentation in addition to documentation you never provided dates for in our previous letter, we ask to have the claim finalized before the end of April 2006.

**AIG00884**

Mr. Clausen
March 30, 2006
Page 2


Yours very truly,

Kenneth A. Dowdy

KAD;ls

Enclosures
Cc:    Ms. Selena Ho-(w/encl.) (Via Federal Express)
       Mr. Roger Iverson-(w/o-encl.) (Via U.S. Mail)

AIG00885

# Exhibit 13

Exhibit 13

**Farrell, Susan**

| | |
|---|---|
| **From:** | Morton, Daniel |
| **Sent:** | Monday, May 01, 2006 3:03 PM |
| **To:** | clausen@bellsouth.net; selena.ho@aig.com |
| **Cc:** | Farrell, Susan |
| **Subject:** | GSWP Claim #0061343 0061346 0061214 |

Fred & Selena:

I was asked by Sid Belcher of Great Southern Wood for a status on the above claim. Sue Farrell, HRH Claims (847) 330-3680, and I called Fred this afternoon to get that status.

From GSWP's perspective, they have supplied every document that they have on the product. Some of the documents are manifests, bills of lading, etc. The most relevant ones (in my opinion) are those from Richard Murray & Co, the stevedore. They are date stamped with arrivals and customs clearances. Also, the port authority gave GSWP a detail of the product at the port at the time of the hurricane. The port authority document indicates the vessel on which the product arrived.

I think you have all of the information you could need, so I would like to get a status to the client by Friday. The client is available for your call at anytime as am I.

Thank you – please give me a call this afternoon.

Daniel Morton
Hilb Rogal & Hobbs
425 N Martingale, Suite 1100
Schaumburg, IL 60173
P) 847-330-3684
F) 847-413-9445

5/1/2006

# Exhibit 14

Exhibit 14

## Farrell, Susan

| | |
|---|---|
| **From:** | Farrell, Susan |
| **Sent:** | Monday, June 26, 2006 3:11 PM |
| **To:** | 'selena.ho@aig.com' |
| **Subject:** | FW: great southern wood 0061343, 0061346, 0061214 |

Dan asked me to send you the reply from Sid.

Susan W. Farrell, AIC
Claim Manager
Hilb Rogal & Hobbs
425 N. Martingale Road
Suite 1100
Schaumburg, IL 60173
ph # 847-330-3680
fx # 847-413-9445

---

**From:** Sidney Belcher [mailto:sbelcher@gswp.net]
**Sent:** Monday, June 26, 2006 2:59 PM
**To:** Farrell, Susan
**Cc:** Morton, Daniel
**Subject:** RE: great southern wood 0061343, 0061346, 0061214

They have all the information we have; we have sent it to them them twice now.  Any further delays will result in a lawsuit.

---

**From:** Farrell, Susan [mailto:Susan.Farrell@HRH.com]
**Sent:** Monday, June 26, 2006 2:56 PM
**To:** Sidney Belcher
**Cc:** Morton, Daniel
**Subject:** FW: great southern wood 0061343, 0061346, 0061214
**Importance:** High

fyi

Susan W. Farrell, AIC
Claim Manager
Hilb Rogal & Hobbs
425 N. Martingale Road
Suite 1100
Schaumburg, IL 60173
ph # 847-330-3680
fx # 847-413-9445

---

**From:** Ho, Selena [mailto:Selena.Ho@AIG.com]
**Sent:** Monday, June 26, 2006 2:45 PM
**To:** Farrell, Susan
**Cc:** Morton, Daniel
**Subject:** RE: great southern wood 0061343, 0061346, 0061214
**Importance:** High

We are still reviewing the paperwork on the open claims.  Seems like we are missing some information.  A formal letter will be sent to the Insured's attorney in a week or so with our list of requested information/documents.  Your office will receive a faxed copy as usual.

6/26/2006

Thanks, Susan!

## *Selena*

**IMPORTANT NOTICE:** *The information in this e-mail (and any attachments hereto) is confidential. If you are not the intended recipient, you must not use or disseminate the information. If you have received this e-mail in error, please immediately notify me by "Reply" command and permanently delete the original and any copies or printouts thereof. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by American International Group, Inc. or its subsidiaries or affiliates either jointly or severally, for any loss or damage arising in any way from its use.*

-----Original Message-----
**From:** Farrell, Susan [mailto:Susan.Farrell@HRH.com]
**Sent:** Friday, June 23, 2006 3:09 PM
**To:** selena.ho@aig.com
**Cc:** Morton, Daniel
**Subject:** great southern wood 0061343, 0061346, 0061214

Dear Selena

The insured has requested a reply or status on this claim as it relates to the 5-30-06 letter that they sent you.

Please provide asap.

Thanks

Susan W. Farrell, AIC
Claim Manager
Hilb Rogal & Hobbs
425 N. Martingale Road
Suite 1100
Schaumburg, IL 60173
ph # 847-330-3680
fx # 847-413-9445

6/26/2006